No. 67,401

STATE OF KANSAS, *Appellee*, v. JAMES MINSKI, *Appellant.*
(850 P.2d 809)

Opinion filed April 16, 1993.

B. *Kay Huff,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant. *James Minski* was on the brief pro se.

*Richard G. Guinn,* assistant district attorney, argued the cause, and *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

Six, J.: A juror in an attempted first-degree murder-aggravated kidnapping case fainted during trial when slides of the victim were being shown. A doctor who had just testified concerning the victim's injuries treated the juror. The juror who fainted was replaced by an alternate. Defendant moved for a mistrial. The motion was denied.

This case addresses: (1) the mistrial ruling; (2) the ex parte conversation between the trial court and the fainting juror; (3) the admissibility of the slides; (4) the absence of an instruction on voluntary intoxication; and (5) defendant's pro se brief and pro se argument. James Minski was convicted of aggravated kidnapping (K.S.A. 21-3421) and attempted first-degree murder (K.S.A. 1992 Supp. 21-3301 and K.S.A. 1992 Supp. 21-3401). Our jurisdiction is under K.S.A. 1992 Supp. 22-3601(b)(1) (appeal of a class A felony conviction or imposition of a maximum sentence of life imprisonment).

We find no error and affirm.

### Facts

J.C.B., the victim, received an early morning phone call from Minski requesting a ride. J.C.B., who knew Minski, drove her car to his house. Minski said he did not have his shoes on and that she should follow him downstairs.

Once downstairs, Minski threw J.C.B. on the couch, put his hand over her mouth, and said, "I am doing this because Gary said he would kill us both if we didn't." He then gagged and blindfolded J.C.B., moved her to a chair, and tied her hands. He removed her shorts and swimsuit bottoms and engaged in vaginal, oral, and anal intercourse against her will. During the rape, Minski told her "they wanted to know where the pot was." J.C.B. replied that she knew nothing about the pot. While J.C.B., was still sitting on the chair, a second individual (she assumed it was Gary Freeman) raped her. Minski moved J.C.B. from the chair to the bed and without her consent had vaginal intercourse with her a second time. Minski then dressed her and said, "[W]e're going to take you to find out where the pot is." On cross-examination, J.C.B. explained that she was assaulted, dressed, assaulted, and dressed again.

Minski told her to get in a car trunk. J.C.B. refused. She was put in the trunk by Minski. (She recognized the car as her own because she felt wires taped together by the trunk keyhole as in her car.) The car was driven into Kansas. When Minski opened the trunk, J.C.B. stated, "Gary, I didn't do it." Minski replied, "Gary will be here in a minute" and began choking her around the neck with his hands. J.C.B. tried to resist. Minski grabbed her, placed his arm around her head and neck, and snapped her neck as he jerked her out of the trunk. She fell to the ground. Minski choked her again. While being choked, J.C.B. was struck on her right temple and lost consciousness. She assumed someone other than Minski had struck her. J.C.B. regained consciousness in a wooded area. She noticed that the seat covers from her car and the carpet from her trunk were on her. Her wrists had been cut. She reached up to her neck and discovered a shoelace, which she then wrapped around her arm to use as a tourniquet to stop her wrist from bleeding.

J.C.B. flagged down a pickup truck. The pickup driver said J.C.B. stated that "she had been beaten up and raped and left for dead." J.C.B. was taken by ambulance to the Olathe Medical Center. She suffered a significant blood loss. The surgeon who operated on her wrist concluded that the injury was life threatening. J.C.B. also suffered injuries to her neck consistent with efforts at strangulation. Injuries to her head consisted of multiple

bruises as well as bleeding in her eyes. The bleeding inside the eyes was consistent with blunt trauma of a fairly severe extent.

Before J.C.B. was moved to the hospital, a shoelace, a pair of socks which had been tied together, and a piece of 3/8-inch nylon rope were recovered. Later, at the crime scene, her car seat covers and carpeting were located underneath a hedgerow. J.C.B. reported "that a man known to her as Jimmy and another man known as Gary Freeman had done that to her." J.C.B. also gave directions to "Jimmy's" house. The police located Minski's residence and secured a warrant. Tennis shoes without shoelaces and a shoelace which matched a shoelace retrieved from J.C.B.'s neck were recovered.

Slides of J.C.B.'s injuries were shown during the treating physician's testimony. At the close of the testimony, a juror fainted. The trial court declared a recess. The case was recalled later that afternoon. When the jury was not in the courtroom, the trial court stated:

"[THE COURT:] During the last hearing, Mrs. Hart, one of the jurors, fainted. The Court did not formally take a recess at that time. The Court excused both parties, excused the remainder of the jury to make space available for MedAct to be called for Mrs. Hart, and she is—she went to the hospital to be checked out.

"The Court wanted to make a record of the situation and the fact that this did occur and the Court did not actually formally recess on the record. However, when the Court did excuse the jury from the courtroom, the Court directed the jury to go back to the jury room, which they did, and after I got permission from both parties to recess the jury for the noon hour, the Court did advise the jurors not to discuss this case and the usual admonitions. Before the Court calls the jury back in to continue, it appears we have [sic] will have to continue with the alternate, Mr. Maus.

"Is there anything by the State at this time?

"[The State]: With regard to your last comment, is it your understanding we will not be proceeding with the juror that fainted?

"THE COURT: When she left, she was going to the—probably the Olathe hospital, and she looked very peaked at the time. I advised her if she felt like it, she should return to the court and we were going to reconvene at 1:15 and she could call. And she has not returned, and we plan to continue with the case at this time. Since she is not here, the Court would anticipate proceeding without her."

Defense counsel moved for a mistrial. The State opposed the motion. The motion was denied.

The trial court recalled the jury, replaced the juror who had fainted with an alternate, and explained:

"THE COURT: The record should reflect that the jury is in place. For the record, and for the benefit of the jury panel, the Court has determined that Ms. Hart is unable to continue in this matter and the Court—Ms. Hart has been excused from jury service.

"And Mr. Maus, who was selected as an alternate, at this time you are a part of the jury panel and will continue as one of the jurors in this matter."

A Jackson County, Missouri, prosecutor in charge of the sexual assault division testified that Minski had entered pleas in open court in Missouri. Minski admitted that he had twice raped and twice committed forcible sodomy against J.C.B. in his basement. (Minski lived in Grandview, Missouri.) He also entered a plea to charges of felony auto theft. No negotiations or promises were made to Minski prior to entering the guilty pleas in Missouri.

### Minski's Story

Minski testified that on the evening in question, he arrived at a bar between 7:45 and 8:15 p.m. He stayed at the bar until almost 2:00 a.m., drinking beer, Jack Daniels whiskey, and pina coladas. Minski and a friend smoked marijuana during the ride home as well as after they arrived at home. Minski saw J.C.B. drive by. Later, he called J.C.B. to ask for a ride to another friend's house. According to Minski, J.C.B. did not sound "particularly groggy or sleepy," and she immediately agreed to come over to give him the ride. He also stated that she told him she did not have any gas and had to go to work the next day. He told her he would give her gas money. J.C.B. appeared to be high and drunk when she arrived. Minski invited her downstairs, where they talked and smoked marijuana for about 15 to 20 minutes. Eventually, "one thing led to another," and they had consensual sex. They talked afterwards. J.C.B. became angry and left. Minski fell asleep.

Minski explained that, on the advice of his attorney, he pled guilty in Missouri to two counts each of rape and sodomy because he "was scared to death of the fact I would get hundreds of years" if the sentence was imposed by a jury rather than the judge. On cross-examination, Minski said that he was lying when he told the Missouri judge that he was guilty of rape and sodomy. He also testified that he had stated that he was satisfied with his

representation and that the plea was voluntary but that he felt forced to enter the plea. He believed J.C.B. was lying. When she became angry the night of the incident, she told him she would go to the police and accuse him of rape.

## Voluntary Intoxication

Minski asserts that he had consumed a variety of alcoholic beverages and smoked marijuana during the night in question. However, he did not request an instruction on voluntary intoxication.

When no request for an instruction on voluntary intoxication is made, our standard of review requires us to reverse only if the trial court's failure to give the instruction was clearly erroneous. *State v. Davis,* 247 Kan. 566, 574, 802 P.2d 541 (1990). There must be evidence of intoxication upon which a jury might find that Minski's mental faculties were impaired. Was he incapable of forming the necessary specific intent required to commit the crime, even if he asserts another inconsistent defense? See *State v. Shehan,* 242 Kan. 127, 744 P.2d 824 (1987).

Minski reasons that his testimony of alcohol and drug consumption entitled him to a voluntary intoxication instruction on both specific intent crimes (aggravated kidnapping and attempted premeditated murder). He further contends that his denial of the crime is not fatal to the need to instruct on voluntary intoxication. Minski suggests that in *State v. Seeley,* 212 Kan. 195, 510 P.2d 115 (1973), we held that the giving of a voluntary intoxication instruction was proper even though Seeley could not recall any involvement in the crime he was charged with. Minski misreads *Seeley.* Seeley requested a package of instructions covering his defense of insanity. One was PIK Crim. 2d 54.11 (1988 Supp.) on involuntary intoxication. The trial court refused to instruct on involuntary intoxication. The issue in *Seeley* was whether the evidence presented a bona fide issue of insanity or merely demonstrated voluntary intoxication. 212 Kan. at 198. The voluntary intoxication instruction in the context cited by Minski was not an issue in *Seeley.*

Unless evidence is presented that shows intoxication to the extent a defendant's ability to form the requisite intent was impaired, no voluntary intoxication instruction is required. *State v.*

*Gadelkarim,* 247 Kan. 505, 508, 802 P.2d 507 (1990). According to the State, on appeal Minski has exaggerated the extent of his alcohol and drug consumption. Minski described his night at the bar and his later encounters with J.C.B. in detail. At trial, Minski neither contended that he was intoxicated nor claimed that he could not remember what happened on the night of the attack.

The evidence did not provide sufficient proof for a jury to determine that Minski's mental faculties were impaired to the extent that he was incapable of forming the requisite intent to commit aggravated kidnapping and attempted first-degree murder. *State v. Keeler,* 238 Kan. 356, 360, 710 P.2d 1279 (1985) (the burden of showing that intoxication has robbed defendant's mental faculties is on defendant).

The absence of a voluntary intoxication instruction, in the case at bar, is not error.

### Minski's Mistrial Motion

The standard of review on the trial court's refusal to declare a mistrial is abuse of discretion. *State v. Stallings,* 246 Kan. 642, Syl. ¶ 1, 792 P.2d 1013 (1990). Minski observes that a trial court must, in general, avoid ex parte communication with a party or juror. We agree. He references K.S.A. 22-3405(1), which provides that a defendant in a felony case be present at critical stages of the trial, including the impaneling of the jury and return of the verdict. Minski objects to the trial judge's conversation with the fainting juror off the record without either Minski or his lawyer present. Minski emphasizes that the judge denied the motion for a mistrial without questioning the remaining jurors about the effect of the fainting incident upon their ability to deliberate impartially. No cautionary instruction was given. Minski asserts that because the trial court dismissed the juror ex parte, and summarily found no prejudice, we must reverse and remand for a new trial. We do not agree.

Minski relies on *State v. Knapp,* 234 Kan. 170, 671 P.2d 520 (1983), and *State v. Stallings,* 246 Kan. 642. In *Knapp,* we held that a defendant had a right to be present at a conference in chambers where a juror informed the court that she had knowledge of an incident which she had failed to mention during voir dire. 234 Kan. at 180. The State conceded error but argued that

Knapp's presence was not essential because his lawyer was present. The lawyer was given an opportunity to question the juror and to present argument to the court about whether the juror should continue to sit. 234 Kan. at 179. We agreed with the State, holding that the clear violation of the statute was harmless error. *Stallings* reasoned that a trial judge properly substituted an alternate juror when a deliberating juror stated that his religious convictions prevented him from rendering a decision. We addressed neither the ex parte issue nor Stallings' right to be present during the judge-juror private conversation. 246 Kan. at 646-47.

Minski argues that *Knapp* dictates error in the case at bar. Minski emphasizes that, unlike Knapp, Minski's rights were not protected by his counsel because counsel was not present during the conversation between the trial judge and the fainting juror. Minski contends that because there is no contemporaneous record, we cannot determine whether the trial court acted with reasonable cause in substituting an alternate juror. According to Minski, it was undisputed that the juror fainted out of sympathy and horror from viewing the slides of the victim. Minski reasons that although the defense may have ultimately decided to ask that the juror be excused, Minski had no participation, no information, and no opportunity to be heard before the decision was made. Minski concludes his lack of participation was a denial of both due process and his statutory rights.

Minski cites a variety of cases to support his position, *i.e.,* *State v. Chears,* 231 Kan. 161, 166, 643 P.2d 154 (1982) (defendant moved for a mistrial because a child witness cried and sobbed on the witness stand; trial judge denied the motion, stating that he had not observed the crying); *State v. Everson,* 229 Kan. 540, 543, 626 P.2d 1189 (1981) (no prejudice where rape victim burst into tears and court cautioned that neither sympathy nor prejudice should influence jury's decision); *Underwood v. Indiana,* 535 N.E.2d 507 (Ind. 1989) (admonition to jury cured emotional outburst by victim's mother in courtroom, and fainting by spectator not sufficiently linked to evidence to prejudice defendant); *Com. v. Marshall,* 523 Pa. 556, 568 A.2d 590 (1989) (immediate instruction diffused any prejudice where mother of deceased interrupted homicide trial with emotional outburst, but trial court

cautioned the jury to ignore outburst and to decide case exclusively on facts and not on sympathy, emotion, or prejudice); *Com. v. Atkinson,* 364 Pa. Super. 384, 398, 528 A.2d 210 (1987) (spectator making thumbs down gesture to jury did not prejudice jury where judge took immediate steps to determine impact of behavior on jurors by asking them whether gesture influenced their opinion and by observing demeanor of jurors when responding). We have reviewed Minski's authorities and find them deficient in developing a rationale for reversal in the case at bar. A cardinal concept for reversal is a showing by a defendant of substantial prejudice. *Stallings,* 246 Kan. at 646. How did the trial court's action or inaction in resolving the emergency prejudice Minski?

In *State v. Folkerts,* 229 Kan. 608, 629 P.2d 173, *cert. denied* 454 U.S. 1125 (1981), Folkerts claimed the trial court committed error in replacing one of the jurors with an alternate without an in court, on-the-record examination of the juror. During a weekend recess, one of the jurors contacted the trial judge and advised of her grandfather's death and of her need to attend the grandfather's out-of-state funeral. The trial judge excused the juror and appointed an alternate. We held that K.S.A. 22-3412(3), which governs substitution of a juror with an alternate, is similar to Fed. R. Crim. Proc. 24(c). Under federal cases, it is well established that the substitution of an alternate for a juror for reasonable cause is within the discretion of the trial court. 229 Kan. at 616.

K.S.A. 22-3412(3) was interpreted in *State v. Haislip,* 237 Kan. 461, 701 P.2d 909, *cert. denied* 474 U.S. 1022 (1985). In *Haislip,* we reasoned that the attorney's right to challenge jurors for cause prior to their being impaneled and the trial court's discretionary power to later excuse a juror due to incapacity are two entirely different matters which should not be confused. Despite defense counsel's desire in *Haislip* to inquire further of the excused juror, the trial judge concluded a hearing was unnecessary since there was no claim of juror misconduct. The trial court found the juror was simply not up to the stress of the situation. The juror was excused for incapacity. An alternate juror was selected. *Haislip,* 237 Kan. at 467. We concluded that although it would have been a better practice for the trial court to have conducted a hearing, Haislip failed to show he was prejudiced by the lack of one.

Therefore, no error occurred by excusing the juror without a hearing. We found no abuse of discretion. 237 Kan. at 470-71.

The issue of explicit photographs, in the case at bar, was covered during voir dire. The juror who ultimately fainted gave no indication of concerns about her ability to view the slides. The slides were shown to the jurors during the testimony of J.C.B. None of the jurors reacted adversely at that time. The same slides were again shown to the jurors during the testimony of the orthopedic surgeon. The trial judge found that although the slides were vivid, they were not gruesome and were necessary to show the nature of the injuries and to assist the doctor in testifying as to what he observed. The trial court found no prejudice to Minski. Minski never requested to individually question jurors regarding the effect of the photographs upon their ability to be fair and impartial. At the motion for new trial hearing, Minski presented no evidence from any juror to support his contention of prejudice due to the fainting incident.

The reasoning of *Haislip* and *Folkerts* is persuasive in resolving the mistrial issue in the case at bar. The trial court should be allowed to discharge jurors for reasonable cause if they are found to be unable to perform their duties. Reasonable cause existed here. Minski has failed to demonstrate prejudice. We find no abuse of discretion.

### Minski's Right to be Present

We have held that a conference between a trial judge and a juror is a critical stage of the proceeding requiring the presence of the defendant when the trial judge communicates with the jury. *Crease v. State*, 252 Kan. 326, Syl. ¶ 1, 845 P.2d 27 (1993). We also have acknowledged that the scope of the defendant's right to be present will be influenced by circumstances and context, *i.e.*, a defendant does not have a right to be present at proceedings before the court involving matters of law, *State v. Mantz*, 222 Kan 453, 463-64, 565 P.2d 612 (1977), at remand proceedings, *State v. Hood*, 245 Kan. 367, 780 P.2d 160 (1989), and when excuses from jury service and deferrals were determined prior to when jurors were assigned to a particular case, *State v. Baker*, 249 Kan. 431, 442, 819 P.2d 1173 (1991).

A determination must be made as to whether the violation of a defendant's right to be present was prejudicial. In *State v. Turbeville,* 235 Kan. 993, 686 P.2d 138 (1984), we analyzed the statutory requirement that the defendant shall be present at every stage of the trial and reasoned that "[i]n general a defendant's statutory and constitutional rights to be present are violated only if the defendant is absent when the jury is hearing the case or when he is prevented from attending such other proceedings where his presence is essential to a fair and just determination of a substantial issue." 235 Kan. at 1002. In *State v. Baker,* 236 Kan. 132, 689 P.2d 803 (1984), we explained that "[a]lthough a defendant has the right and should be present when a court communicated with a jury, the absence of the defendant may be harmless error where there is no reasonable possibility of prejudice from the error." 236 Kan. at 136-37.

The trial court, in the case at bar, had the discretion to excuse the juror who fainted and to substitute an alternate juror. Although Minski had the right to be present and although it may have been better practice for the discussion between the juror and the trial judge to have been placed on the record, Minski has failed to demonstrate that he was prejudiced. An emergency medical situation was involved. If a juror-related emergency medical situation arises in court it may be either impractical or unwise for the trial judge to interrupt medical treatment. The merit of a trial judge's involving a defendant and his counsel in the questioning of an ill or injured juror on the record may, at times, be doubtful. Emergency situations should be resolved by the trial judge on an individual basis. The fundamental right of a defendant to be present in person and by counsel during judge-juror conversations is to be factored into each emergency situation.

Minski is correct in observing that in the absence of a record we do not know specifically what was said by the court to the juror or by the juror to the court during the conversation relating to the juror being excused. A reasonable assumption is that the court's remarks focused on either concerns for the juror's well-being or the juror's return to the courtroom (or both) and not on Minski's trial.

Defense counsel failed to request a cautionary instruction. The trial judge could have reasonably determined, under these facts,

that either polling the jury or giving a cautionary instruction was unnecessary or even unwise because such action would further focus the attention of the jurors on the fainting incident. Minski has not demonstrated prejudice. The trial court did not abuse its discretion.

## The Photographic Slides

The standard of review regarding the admission of photographs is abuse of discretion. *State v. Hill,* 242 Kan. 68, 79, 744 P.2d 1228 (1987).

Minski failed to object to the admissibility of the slides at trial and did not file a pretrial motion in limine to keep the slides from being offered. Minski contends that the photographs of J.C.B.'s injuries which were taken at the hospital were gruesome and cumulative. He also alleges that when photographic slides are reproduced on an overhead projector, creating a magnified image, they are no longer true reproductions. Consequently, he argues it was error for the court to admit these slides.

Minski reasons that because the juror who was closest to the projector screen fainted, the prosecutor succeeded only too well in arousing juror sympathy. He concludes, therefore, that the slides were cumulative to the numerous witnesses who testified about J.C.B.'s injuries.

The State accents the fact that the trial judge did not find the slides gruesome. Instead, the judge concluded, "[T]hey were certainly vivid, but not gruesome. The court finds that the slides were necessary to show the nature of the injuries and to assist the doctor in testifying as to what he observed."

The fact that photographs are gruesome will not, in and of itself, render photographs inadmissible. *State v. Hedger,* 248 Kan. 815, 821, 811 P.2d 1170 (1991). In each case, it is the trial judge who determines whether the photographs serve a proper purpose in the jury's enlightenment. *State v. Graham,* 247 Kan. 388, 397, 799 P.2d 1003 (1990). At Minski's trial, the doctor appears to have pointed to the slides to assist his explanation while testifying.

In *State v. Yarrington,* 238 Kan. 141, 708 P.2d 524 (1985), the defendant objected to the showing of slides of an autopsy. We advised that the court should view slides outside the presence of the jury, unless their admissibility has been agreed to, in order

to avoid showing the jury what may be determined to be inadmissible evidence. 238 Kan. at 144. It is unclear from the record whether the pretrial slide viewing procedure we discussed in *Yarrington* was used. However, Minski has not raised the issue. We have viewed the slides. We find no abuse of discretion.

### Minski's Pro Se Brief

Minski filed a pro se brief and a written argument. He contends that he has been denied both due process and his constitutional right of access to the courts. Appellate counsel read Minski's pro se argument at the conclusion of her oral argument. Minski asserts that he had informed appellate counsel of his desire to have certain issues raised on appeal and that counsel failed to advance these issues, so he has not received effective assistance of counsel. He contends that because he is presently in prison in Missouri and does not have access to legal materials concerning Kansas law, he cannot develop his own arguments. Minski observes that he has attempted, without success, to have Kansas legal research materials sent to him. Consequently, he believes his right of access to the courts has been impinged upon.

Minski's appellate counsel filed a motion to withdraw, which was denied by this court. Minski filed a response in which he objected to his counsel's motion to withdraw. He has also filed a notice indicating that he is not knowingly or voluntarily abandoning the issues which his counsel has not raised on appeal. He also states that he wants his ineffective assistance of counsel claim raised on appeal.

Minski has received thorough representation by his advocate in the Office of Appellate Defender.

We have reviewed Minski's pro se brief and his statement. We find neither persuasive in countermanding our affirmance of the trial court.

Affirmed.