No. 95,523

STATE OF KANSAS, *Appellee*, v. DIMITRIUS KEITH DAVIS, *Appellant*.

(163 P.3d 1224)

Opinion
filed August 3, 2007.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Constance M. Alvey*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Dimitrius Keith Davis appeals his jury convictions for premeditated first-degree murder, aggravated robbery, and conspiracy to commit aggravated robbery, and the order assessing attorney fees. We affirm the convictions, but we reverse and remand on the attorney fee issue.

Davis' convictions arose from an incident in which Eric Williams was shot to death and robbed of his money. Ronnie Townsend had enlisted Davis' assistance to retrieve $450 that Williams was holding for Townsend. After some time spent trying to locate Williams, the debt collectors found him in a residence. Townsend and Davis, armed with a handgun, entered the house, while others remained in a vehicle. According to Townsend, when Williams was not forthcoming with the money, Davis shot Williams in the top of the head and took the money in his possession. Williams died from the gunshot wound.

Townsend testified against Davis at a preliminary hearing. However, at Davis' trial, Townsend invoked his Fifth Amendment rights, and the district court declared him to be an unavailable witness. The State presented Townsend's preliminary hearing testimony by having one prosecutor read the questions and another prosecutor read Townsend's responses from the witness stand.

Apparently, during voir dire, one of the prospective jurors advised the court and counsel that she had a personal conflict if the trial lasted into Friday. Specifically, she was to pick up and pay for some dresses to be used in a wedding and transport them to Nebraska. That juror was nevertheless selected to serve, but two alternate jurors were also selected. The case was submitted to the jury on Thursday, but a decision was not reached by the end of the day. The conflicted juror then contacted the judge, who released her from the jury. The following day, Friday, the judge informed the defendant and respective counsel of the court's action. Over defense objection, an alternate was selected and, later in the day, the jury returned its guilty verdicts.

On appeal, Davis contends: (1) the district court's dismissal of the juror violated Davis' constitutional rights; (2) the district court denied Davis a fair trial by permitting a prosecutor to play the role of Townsend during the reading of the preliminary hearing transcript; (3) the State failed to prove a conspiracy to commit robbery; (4) the district court's failure to properly instruct the jury regarding the burden of proof, presumption of innocence, and reasonable doubt was clearly erroneous; (5) cumulative error denied Davis a fair trial; and (6) the district court failed to make the requisite findings prior to ordering Davis to reimburse the State Board of Indigents' Defense Services (BIDS) for attorney fees.

## RELEASING A JUROR

Davis states his issue as: "The district court violated [Davis'] rights to due process and a jury trial when it dismissed a juror without providing any of the parties an opportunity to be heard." However, commingled in his arguments are other incidentally raised questions.

Davis appears to assert two principal complaints about the procedure employed by the district court, albeit the arguments are intertwined. First, he contends that the Thursday evening ex parte communication between the juror and the judge violated his right to be present at all critical stages of the trial. Second, he argues that due process mandated that he be provided with a hearing prior to the court's dismissal of the juror. Both issues are questions of

law, and "[a]n appellate court's scope of review on questions of law is unlimited." *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996); see also *State v. Engelhardt*, 280 Kan. 113, 121, 119 P.3d 1148 (2005).

The State avoids Davis' principal complaints, choosing to argue that the district court did not abuse its discretion in finding that the juror's personal conflict provided sufficient cause for substituting an alternate for the original juror, as permitted by K.S.A. 2006 Supp. 22-3412(c). See *State v. Minski*, 252 Kan. 806, 814, 850 P.2d 809 (1993); *State v. Folkerts*, 229 Kan. 608, 616, 629 P.2d 173, *cert. denied* 454 U.S. 1125 (1981) (reviewing district court's ruling to substitute a juror with an alternate for abuse of discretion). We agree that appellate courts afford the district court considerable discretion in determining whether to substitute for a juror who is "ill, incapacitated, or affected by personal reasons." *State v. Cheek*, 262 Kan. 91, 108, 936 P.2d 749 (1997). Such is the case here. However, we note that the same deference is not extended to substitutions that are based on a juror's belief concerning the outcome of the case. See, *e.g.*, *Cheek*, 262 Kan. at 108; *State v. Stafford*, 255 Kan. 807, 824, 878 P.2d 820 (1994).

A defendant has a constitutional right to be present during critical stages of a criminal proceeding. That right emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. See *State v. Mann*, 274 Kan. 670, 680, 56 P.3d 212 (2002); *State v. Calderon*, 270 Kan. 241, 245, 13 P.3d 871 (2000). Likewise, in Kansas, the right to be present is codified. K.S.A. 2006 Supp. 22-3405(1) ("The defendant in a felony case shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict.").

"It is well settled that a conference between a trial judge and a juror is a critical stage of the trial at which a criminal defendant has a constitutional right to be present. [Citations omitted.]" *Mann*, 274 Kan. at 682; accord *State v. Lovely*, 237 Kan. 838, Syl. ¶ 3, 703 P.2d 828 (1985). Thus, Davis had a right to be present when the district court had a conversation with the juror on Thursday

evening. The question remains, however, whether that ex parte conversation requires a reversal.

Davis argues that the judge's conversation with the juror is structural error, requiring reversal regardless of whether the defendant suffered prejudice. Here, Davis' challenge to the district court's ex parte communication with the juror is a due process complaint. As Davis acknowledges, we do not always find reversible error in such circumstances. "The due process right to be present only exists to the extent that a fair and just hearing would be thwarted by the defendant's absence. [Citations omitted.]" *Mann*, 274 Kan. at 680. Indeed, even in the context of excusing a juror for personal reasons, we have declined to find a weekend communication between the trial judge and the juror to be structural error. See *Folkerts*, 229 Kan. at 616. Likewise, in *Minski*, 252 Kan. at 815-16, we held that the harmless error rule applies in determining whether there has been a violation of the defendant's right to be present when faced with an ex parte conference between a trial judge and a juror, specifically declaring that "[a] determination must be made as to whether the violation of a defendant's right to be present was prejudicial." Thus, reversal is mandated by the communication only if it prejudiced Davis' right to a fair trial.

Davis does not and cannot complain about the substance of the conversation between the judge and juror. Although the transcript of the voir dire is not in the record on appeal, the district court noted and no one disputes that the juror's personal reasons for being unavailable on Friday were made abundantly clear to everyone up front. Unlike the weekend communication in *Folkerts*, here the juror did not convey anything to the court that the defense did not already know.

Davis' overarching complaint is that he believes the juror's responses during voir dire indicated that it was possible that she could have deliberated for a period of time on Friday, perhaps until as late as 2:30 P.M. He claims that his counsel relied upon that representation in deciding not to have the juror removed for cause, and, therefore, the trial was irrevocably tainted. He also mentions that the parties were not allowed a peremptory strike with respect to the alternate jurors.

First, we note that appellate counsel's citation to the record does not support the contention that trial counsel would have asked to strike the conflicted juror for cause if counsel had known that the juror would be excused Thursday evening. The transcript reveals that trial counsel declared that he would have stricken one of the *alternates*. With respect to the excused juror, defense counsel made it clear that he wanted the juror, in spite of her conflict, and that his disappointment was that the juror was not deliberating Friday morning. Specifically, counsel stated:

"I am very concerned because I can tell the Court that out of the I guess 38 people we had when we started, the jury selection process, the juror that is not present is one of the four or five that we wanted on our jury, and she ended up on our jury. And again, whether she's voting guilty or innocent, we don't know that. I just hate to see her excused when she could have possibly deliberated for four or five hours this morning."

With respect to Davis' passing reference to being denied a peremptory challenge for the alternates, he fails to present us with either a sufficient record or supporting argument to permit us to resolve the question. See *State v. Holmes*, 278 Kan. 603, 612, 102 P.3d 406 (2004) (appellant's burden to furnish a record which affirmatively shows that prejudicial error occurred, without which the appellate court presumes the district court's action was proper); *In re Marriage of Cohee*, 26 Kan. App. 2d 756, Syl. ¶ 4, 994 P.2d 663 (1999) (point incidentally raised but not properly keyed to the record on appeal nor briefed with citations of authority to support the issue is deemed abandoned); see also Supreme Court Rule 6.02(e) (2006 Kan. Ct. R. Annot. 36) (appellant's brief shall contain the arguments and authorities relied upon, subdivided as to the separate issues).

Davis' trial counsel stated that the defense "would object on the record to the process." As noted above, counsel did not challenge the existence of reasonable cause to excuse the juror, but rather complained of the timing of the release. Apparently then, Davis is arguing that due process required that he be afforded a hearing, at which he could advocate keeping the juror in deliberations for some period of time on Friday, rather than releasing her Thursday evening.

In *State v. Haislip*, 237 Kan. 461, 466, 701 P.2d 909, *cert. denied* 474 U.S. 1022 (1985), a juror submitted a written request to be excused, which the attorneys discussed in chambers. However, the district court refused to hold a hearing on the matter. The defendant claimed on appeal that he was denied the right to have his guilt or innocence determined by the jury he selected because of the hearing denial. The *Haislip* opinion noted that there is no right in Kansas law to the original 12 jurors and that the reasonable cause standard from *Folkerts* applied in such matters. 237 Kan. at 468-69. The opinion then looked at federal authorities:

"In 2 Wright, Federal Practice and Procedure: Criminal § 388 pp. 386-89 (1982), it is stated:

" 'The substitution of an alternate for a juror for reasonable cause is within the prerogative of the trial court *and does not require the consent of any party*. The court has discretion in deciding when to make such a substitution. It also has discretion in the procedure to be used to ascertain whether a substitution should be made. Every effort should be made to give defendant and his counsel an opportunity to be heard before making such a substitution, but absent a showing of prejudice, reversal is not required for failure to do so.' (Emphasis added.)" 237 Kan. at 469.

*Haislip* opined that it would have been a better practice for the court to have conducted a hearing, but that the defendant had failed to show he was prejudiced by the lack of a hearing. 237 Kan. at 469 (citing *Commonwealth v. Haywood*, 377 Mass. 755, 388 N.E.2d 648 [1979]). Likewise, in this case, the court could have avoided the due process challenge by conducting a hearing, but the lack of a hearing did not prejudice Davis' right to a fair trial.

Davis knew during voir dire that the particular juror had a personal reason requiring her to leave town on Friday. The defense chose to leave her on the jury because the defense perceived her to be a favorable juror. Having made that strategic decision, which did not pan out, the defense's attempts on appeal to claim prejudice because the juror did not deliberate for 4 or 5 hours on Friday are unpersuasive.

Davis points out that the jury reached a decision on Friday, after the alternate was selected and the jury was instructed to begin anew on its deliberations. He then makes the curious contention

that if the excused juror had been required to return to deliberations Friday morning, "it is likely that she could have completed her duties without any difficulty." Of course, the newly constituted jury reached a decision of guilty, meaning the 11 jurors with which the excused juror was serving voted to convict Davis. One can perceive that the only way in which the jury would have reached a quick decision on Friday morning is if the excused juror had also voted guilty. Davis does not explain the prejudice of being convicted by a jury containing the alternate versus being convicted by a jury containing an original juror who the defendant favored.

As the judge explained to counsel, the court "didn't want [the excused juror] thinking about wedding dresses when she was deliberating on Mr. Davis's case," and the court "felt it was more important to have someone that was concerned and conscientious on this case, than whether or not their niece's dress was going to be pretty when she got it to the wedding." In that context, one might find it unlikely that the conflicted juror would be inclined to act as the lone holdout for acquittal, or that, if the juror did so, the district court would declare a hung jury prior to 2:30 P.M. on Friday.

Nevertheless, all such speculation aside, Davis has simply failed to persuade us that the ex parte communication or the lack of hearing prejudiced his right to a fair trial, and we find any errors in that regard to be harmless.

### PRELIMINARY HEARING TESTIMONY

Next, Davis complains of the manner in which the State presented Townsend's preliminary hearing testimony to the jury. Specifically, Davis asserts that using a prosecutor to read Townsend's answers from the transcript allowed the State to "polish an otherwise unseemly witness," resulting in the denial of a fair trial. Pointedly, Davis provides no support for that contention, either in the law or under the circumstances of this case.

Initially, we note that Davis does not favor us with a standard of review. See Kansas Supreme Court Rule 6.02(e) (2006 Kan. Ct. R. Annot. 37) ("Each issue shall begin with citation to the appropriate standard of appellate review . . . ."). Defining a review standard

is hindered by the lack of clarity with which Davis defines his complaint. See *State v. Carter*, 278 Kan. 74, 77, 91 P.3d 1162 (2004) (depending on the contours of the rule in question, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion).

Davis' stated issue declares a violation of his right to a fair trial, suggesting a constitutional question. Yet, citing to *State v. McCray*, 267 Kan. 339, 352-53, 979 P.2d 134 (1999), and *State v. Ruebke*, 240 Kan. 493, 517-18, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987), Davis acknowledges that admitting the prior cross-examined testimony of an unavailable witness does not violate a defendant's right to due process. Similarly, Davis does not develop a right of confrontation argument. The methodology employed in the presentation of admissible evidence should rest in the sound discretion of the district court. Thus, we will review Davis' question for an abuse of discretion.

Davis' arguments set forth the disadvantages visited upon the defense when an unavailable witness' prior testimony is presented to the jury, *e.g.*, no opportunity for the defense to cross-examine or for the jury to observe the witness' demeanor. He suggests that a neutral, unbiased person, such as the court reporter, should have simply read the transcript to the jury or that the jury should have been provided with a written transcription. However, he fails to explain how his proffered methodology would have solved the inherent problems associated with an unavailable witness' prior testimony.

During the presentation of the prior testimony, the defense did not complain that the prosecutor was being theatrical or otherwise reading the answers in a prejudicial manner. Prior to the presentation, the district court explained to the jury what would transpire and identified the person reading Townsend's responses as being with the district attorney's office. The court gave the jury a cautionary instruction on accomplice testimony. In short, nothing in the record would indicate that the method employed to present the prior testimony to the jury created any additional prejudice to the defendant.

## SUFFICIENCY OF THE EVIDENCE

Davis contends that the State provided no direct evidence that he entered into an agreement to commit an aggravated robbery to support the conspiracy charge. He argues that the jury had to speculate on unjustifiable inferences. See *State v. Doyle*, 201 Kan. 469, 488, 441 P.2d 846 (1968) ("Presumption and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference . . . ."). We employ the well-settled review standard for a sufficiency of the evidence challenge. See *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

The jury was instructed on the following elements of the conspiracy to commit aggravated robbery count.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant agreed with others to commit or assist in the commission of the crime of Aggravated Robbery;

"2. That the defendant did so agree with the intent that the crime of Aggravated Robbery be committed;

"3. That the defendant or any party to the agreement acted in furtherance of the agreement by confronting one Eric Williams, did shoot Eric Williams and did take property; and

"4. That this act occurred on or about the 19th day of April, 2004, in Wyandotte County, Kansas.

"The definition of Aggravated Robbery, the crime charged to be the subject of the conspiracy, is set forth in Instruction No. 25."

Robbery, as defined by K.S.A. 21-3426, is the taking of property from the person or presence of another by force or by threat of bodily harm to any person. A robbery is aggravated when it is committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3427.

Davis argues that not only did the State fail to provide evidence that the participants agreed to rob Williams, but that all of the witnesses specifically testified that there had been no discussion about robbing or shooting the victim. However, it was up to the jury to assess witness credibility. The agreement element of a conspiracy charge need not be proved by direct evidence; it may be supported by circumstantial evidence.

All of the witnesses testified that Davis and Townsend wanted to get money from Williams that was owed to Townsend. Davis acquired a handgun and participated in the search to locate Williams. Townsend and Davis, armed with a weapon, entered a residence to ask Williams for the money. Williams was shot. Davis exited the house with money. Without stacking presumptions, a rational jury could directly infer from the facts that Davis had agreed with Townsend to assist in the collection of a debt, utilizing the handgun to effect the debt collection by force or threat, if necessary. Appellate counsel's argument that the weapon was taken to the scene solely for protection from Williams merely states another inference which the jury could have drawn, but which it was not required to accept. Thus, the evidence was sufficient to establish the agreement element of conspiracy.

Davis makes a passing reference to the instruction having specified the actual robbery as being the overt act supporting conspiracy, albeit his point in doing so is obtuse. We would note that the completed aggravated robbery would qualify as an overt act for the purpose of the conspiracy to commit aggravated robbery. See *State v. Dreiling*, 274 Kan. 518, 545, 54 P.3d 475 (2002), *cert. denied* 538 U.S. 944 (2003) (murder qualifies as an overt act for purposes of conspiracy to commit murder); *State v. Wilkins*, 267 Kan. 355, 365, 985 P.2d 690 (1999).

*JURY INSTRUCTION*

Davis contends the district court's instruction on the burden of proof, presumption of innocence, and reasonable doubt was clearly erroneous. Davis identifies the correct review standard for challenged instructions where there was no objection at trial. See K.S.A. 2006 Supp. 22-3414(3) (without objection, no instruction error unless clearly erroneous); *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006) (instructions clearly erroneous only if reviewing court firmly convinced of real possibility of different jury verdict).

The district court gave the jury the instruction from PIK Crim. 3d 52.02:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty."

Davis presents the oft-made, always rejected, argument that the phrase "*until* you are convinced" improperly misleads a jury into believing that they are expected at some point to be convinced of the defendant's guilt. He quite properly notes that the better word would be "unless," which does not carry a temporal connotation. We have recognized that the former version of PIK Crim. 3d 52.02 using the word "until" would be improved by using the word "unless," and the PIK instruction language was thereafter modified. See *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004). Nevertheless, even where the defense objected to the instruction, we have found the use of "until" could not mislead the jury and declined to reverse. See 278 Kan. at 158. Obviously, then, the instruction was not clearly erroneous.

## CUMULATIVE ERROR

Davis points to the errors he alleges in the foregoing issues and asserts that, even if the individual errors are not sufficient for reversal, their cumulative effect denied him a fair trial. Our test is as follows:

"Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant. *State v. Holmes*, 278 Kan. 603, 641, 102 P.3d 406 (2004)." *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006).

Given that we have not found multiple errors, the cumulative error doctrine is simply not applicable. Nevertheless, we would find that Davis did receive a fair trial, notwithstanding any technical error.

*ATTORNEY FEES*

Davis challenges the sentencing court's order that he reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees. He points out that the sentencing court failed to consider his ability to pay and the financial burden that payment would impose on him, as required by statute and as recognized in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). Davis also makes a cursory mention of the validity of the fees, but fails to develop that argument. See *Cohee*, 26 Kan. App. 2d 756, Syl. ¶ 4 (point incidentally raised but not argued deemed abandoned).

The district court is required to order the defendant to reimburse the state general fund for all or a part of the BIDS fees. K.S.A. 2006 Supp. 21-4603d(i). However, the court must "take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 2006 Supp. 22-4513(b). We recently held: "A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose." *Robinson*, 281 Kan. 538, Syl. ¶ 1.

The State concedes that the sentencing court assessed the BIDS fees without making the requisite inquiries. Accordingly, that portion of the sentence must be reversed and remanded for resentencing with directions for the sentencing court to comply with K.S.A. 2006 Supp. 22-4513.

Affirmed in part, reversed in part, and remanded.