NOT DESIGNATED FOR PUBLICATION

No. 115,781

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STANLEY MITCHELL BURNS, JR.,
*Appellant*.


MEMORANDUM OPINION


Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed June 23, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Amber R. Norris*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., MALONE and POWELL, JJ.


POWELL, J.: Stanley Burns, Jr., appeals the denial of his claim of justifiable dissatisfaction with trial counsel. On appeal, he claims the district court erred in two respects: (1) by proceeding with the hearing on remand without his presence, and (2) by failing to find justifiable dissatisfaction with trial counsel. We find, based upon the record before us and despite a heated confrontation between Burns and his counsel prior to trial, that Burns has failed to prove the elements establishing justifiable dissatisfaction and prejudice. Accordingly, we affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

After events irrelevant to this appeal, the State charged Burns with criminal threat. Michael Brown was appointed to represent Burns on this charge. After a jury convicted Burns of criminal threat, Burns filed a direct appeal with our court, arguing the district court abused its discretion by not properly investigating Burns' request for a new attorney. The facts from that direct appeal follow.

"On the day jury selection was scheduled to begin, Brown informed the district court that Burns no longer wanted Brown to represent him. When asked, Brown opined that the issue stemmed from Burns' dissatisfaction that Brown discovered [a] recording of the [alleged criminal threat] only 10 days before trial. Brown also explained that due to technology issues and Burns' work schedule, Burns had not had an opportunity to listen to the recording. Eventually, the prosecutor retrieved her laptop and played the recording for Burns in the courtroom.

"Burns' complaints with respect to Brown went beyond issues associated with the audio recording. When asked if he had a problem with Brown, Burns stated: 'Yes. I have a problem with anybody that's going to walk up on me in an angry or rude manner. You know, regarding something I'm asking you. And I told him he needed to back up, you know.' When the court asked Burns why he was raising this issue on the day the trial was scheduled to begin, Burns answered:

'This issue just came about. You know, I'm going be—like I said, I'm not going to be bullied. I'm not going to be threatened in an angry manner by someone who is supposed to be representing me as—he's not did anything I've asked. I'm not—just not going to do it. I'm just not going to tolerate it.'

"The court asked Burns when Brown threatened him. Burns answered:

'While we was in the DA's office. When we was alone when I asked him about the [recording]. He walked up on me.

2

. . . .

'I told him he needed to back the fuck up off of me. And he said, you better fuck up. I told him he needed to give me five feet right now. And he backed up. I'm not going to tolerate that behavior from nobody. Not—at least not my attorney that's supposed to be representing. He won't walk up on me like that, no. I'm sorry, I cannot. You think I'm going to trust my live [*sic*] to this man? No. I'm sorry. No. No.'

"Next, the court asked Brown if he was prepared to represent Burns. Brown stated that he was prepared, able, and willing. Following additional comments from Burns with respect to problems listening to the audio recording, the court asked Brown if he wanted to address the court. Brown explained that the format of the audio file likely prevented Burns from initially listening to it, and he stated that he would be willing to stand by and assist Burns if Burns wished to represent himself. Brown did not address Burns' statements concerning the alleged physical threat.

"The district court eventually found that Burns' inability to listen to the audio recording before trial was based on his own refusal to cooperate and denied Burns' request for new counsel. When the district court denied Burns' request for a new attorney, Burns stated:

'I will not be represented by this man. I cannot—if I'm about to come to blows with a man, I walk out of the courtroom to keep from doing that. No. The Court—I will not be bullied like that. I will not put myself and my life on the line in a situation like that.'" *State v. Burns*, No. 110,567, 2015 WL 4577271, at *1-2 (Kan. App. 2015) (unpublished opinion).

Brown continued to represent Burns through the jury trial.

On appeal, the panel found that the district court failed to properly inquire into Burns' allegations, holding:

3

"Here, Burns' statements concerning the threatened physical altercation involving Brown triggered the district court's obligation to inquire into the potential conflict. The district court fully heard Burns' claims of the threatened physical altercation but did not specifically ask Brown about the altercation. While the district court gave Brown the opportunity to address the court with respect to Burns' complaints, Brown only discussed issues related to the audio recording. Brown did not dispute Burns' accusation that the two had a conflict bordering on a physical altercation, allowing Burns' accusation to go uncontroverted.

"The district court's failure to adequately inquire after becoming aware of a potential conflict between Burns and Brown constituted an abuse of discretion. [Citations omitted.] Our Supreme Court stated that 'in the absence of a suitable record on appeal concerning [an attorney's] alleged conflict of interest, [the remedy] is to remand to the trial court for a determination of whether the defendant can "establish that the conflict of interest adversely affected his counsel's performance." [Citations omitted.]' This is the appropriate remedy here as well because the record on appeal is unsuitable to determine whether the altercation occurred." 2015 WL 4577271, at *3.

The panel remanded the matter to the district court to hold a hearing on Burns' complaints to determine whether he had shown justifiable dissatisfaction with Brown and, if so, to vacate Burns' conviction and grant a new trial. 2015 WL 4577271, at *3-4.

On remand, the district court appointed counsel for Burns, scheduled a hearing, ordered Brown to review his case file and be present to testify, and ordered Burns to be present at the hearing. This order was not mailed to or served upon Burns. It was mailed to his newly appointed counsel, to Brown, and to the State. The order directed appointed counsel to "notify Stanley Burns of the hearing and his obligation to personally attend, as Burns is ordered to be personally present at the hearing."

4

The State, Burns' appointed counsel on remand, and Brown appeared at the hearing; however, Burns did not appear. In response to questioning from the district court, Burns' counsel made the following statements:

"[BURNS' COUNSEL]: Your Honor, on—after I got the appointment and your aide gave me the last address that the Court had, I sent a letter to that address. That was on October 2nd. October 8th I got a phone message from somebody identifying themselves as Stanley Burns. We played phone tag for a couple of days back and forth and we finally had a phone conference on October 14th. We scheduled an appointment in my office . . . on October 26; Mr. Burns did not appear. On October 27th I sent a letter out to Mr. Burns reminding him of the court date, asking him to be here early so that we could at least have a chance to confer. I have not heard from him since.

"THE COURT: Very well. Obviously the Court has limited power over Mr. Burns at this juncture. He's no longer subject to any bond and he's certainly not on probation from this Court. As far as the Court's ability to order or compel his attendance it's somewhat limited just given the circumstances of the case, plus the Court really doesn't have any additional information regarding his whereabouts, a place of work or anything like that.

"The [Court of Appeals] has issued a decision which essentially requires this Court to conduct further hearing in regards to an incident. Essentially the appellate decision would outline that Mr. Burns' position was made known to the Court prior to trial. It was Mr. Brown's position that was not fully explored according to the decision of the Kansas Court of Appeals. Therefore, I believe that Court can go ahead and proceed without Mr. Burns. It appears that he has had the opportunity to appear because he's been notified by his attorney. I trust you discussed the court date and time with him, [counsel]?

"[BURNS' COUNSEL]: I did, Your Honor. Again, this is somebody who identified himself as Stanley Burns. I've never had a face-to-face with anyone who I can say that person is Stanley Burns. But I had a conversation with somebody who identified themselves, and my letters indicated when to be here.

5

"THE COURT: Well, again, he's had the opportunity to appear and he was informed of today's proceedings and for whatever reason has elected not to appear. Therefore, the Court will proceed as mandated by the Kansas Court of Appeals."

Brown was questioned by the court, Burns' counsel, and the State. Brown testified:

"Now, I'll be candid with the Court. I may be appointed to represent criminal defendants but I'm not appointed to take any crap off 'em. And we were in the room and Stanley was complaining and he said something and I said, 'okay', and I got up and I walked across the room. I guess the phrase, and pardon my French, was I was prepared to jump into his shit and not take it any more. And I came up to start to talk to him about what he said and then he jumps up and he says, hey—he says, you gotta back off. You gotta give me five feet, what have you. The—let me find it right here. I didn't threaten him. I don't know why I would even threaten him. At the time I'm 65 years old and he's 30 years younger than me, and I'm very much aware of his history of violence so it's not my practice to threaten people."

The district court held that Burns failed to show justifiable dissatisfaction with Brown as his trial counsel and that Brown's representation of Burns was not adversely affected.

Burns timely appeals.

DID THE DISTRICT COURT VIOLATE BURNS' RIGHT TO BE PRESENT AT TRIAL?

On appeal, Burns argues that the district court erred in holding he waived his right to be present at the hearing and requests us to again remand the case and instruct the district court to provide him adequate notice of the hearing and hold another hearing on this issue. For the first time on appeal, Burns contends that his absence from the hearing on remand from our court violated his constitutional right to be present at all critical

6

stages of the proceedings. Specifically, he argues the district court erred when it held he waived his right to be present because he did not receive adequate notice of the hearing, meaning his absence did not constitute a waiver.

Generally, issues not raised before the district court, including constitutional grounds for reversal, are not properly before us for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

> "'Despite the general rule, appellate courts may consider constitutional issues raised for the first time on appeal if the issue falls within one of three recognized exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. [Citations omitted.]'" 301 Kan. at 1043.

The "exception must be invoked by the party asserting the claim for the first time on appeal." 301 Kan. at 1043; see Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). Burns specifically invokes the exception that resolution of this issue is necessary to serve the ends of justice or to prevent the denial of a fundamental right because it affects his right to be present at a critical stage of the proceeding and his right to conflict-free representation. As such, this issue is properly before us.

Criminal defendants charged with a felony have both a constitutional and statutory right to be present at all critical stages of their trial. U.S. Const. amend. V, XIV; Kan. Const. Bill of Rights, § 10; K.S.A. 2016 Supp. 22-3405(a); *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 (2007). Whether a defendant's right to be present was violated presents a question of law subject to unlimited review. *State v. Herbel*, 296 Kan. 1101, 1106-07, 299 P.3d 292 (2013).

"In determining whether a particular phase of a criminal proceeding is a critical stage, [we examine] 'whether the defendant's presence is essential to a fair and just determination of a substantial issue.' *State v. Edwards*, 264 Kan. 177, 197, 955 P.2d 1276 (1998)." *State v. Carr*, 300 Kan. 1, 230, 331 P.3d 544 (2014), *rev'd on other grounds* 577 U.S. ___, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016). The United States Supreme Court has held that a critical stage of trial entails "proceedings between an individual and agents of the State" with "'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or . . . meeting his adversary.'" *Rothgery v. Gillespie County*, 554 U.S. 191, 212 n.16, 128 S. Ct. 2578, 171 L. Ed. 2d 366 (2008) (quoting *United States v. Ash*, 413 U.S. 300, 312-13, 93 S. Ct. 2568, 37 L. Ed. 2d 619 [1973]). "[A] defendant does not have a right to be present at proceedings before the court involving matters of law." *State v. Minski*, 252 Kan. 806, 815, 850 P.2d 809 (1993) (citing *State v. Mantz*, 222 Kan. 453, 463-64, 565 P.2d 612 [1977]).

"In determining whether the denial of a defendant's right to be present at all critical stages of the trial is reversible error, [we have] applied the same harmless error test as for other constitutional errors." *State v. Bell*, 266 Kan. 896, 920, 975 P.2d 239, *cert. denied* 528 U.S. 905 (1999); see *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967). Under this test, a court will declare a constitutional error harmless only where the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Assuming without deciding that Burns had a constitutional and statutory right to be present at the remand hearing on his request for new counsel, we conclude that if the district court erred, such error was harmless. Burns' absence from the hearing on remand was harmless because Brown did not controvert Burns' testimony regarding Burns'

8

complaint against him before trial, making the issue of whether Burns had shown justifiable dissatisfaction with his trial counsel to be a question of law rather than a question of fact. Moreover, as we more fully explain below, Burns' presence at the hearing on remand would not have affected the outcome. Thus, any possible error in Burns' absence is harmless.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION IN HOLDING BURNS FAILED TO SHOW JUSTIFIABLE DISSATISFACTION WITH HIS TRIAL COUNSEL?

Second, Burns argues the district court abused its discretion when it held Burns had failed to show justifiable dissatisfaction with his trial counsel. He argues that the "record is uncontested that Mr. Brown participated in an aggressive profanity-laden conflict bordering on a physical altercation" and that such circumstances show justifiable dissatisfaction with his trial counsel.

The prior *Burns* panel explained the rules and standard of review applicable to this issue:

> "'A criminal defendant has a constitutional right to the effective assistance of counsel, but that right does not give a criminal defendant for whom counsel has been appointed the right to choose which attorney will represent him or her. [*State v. Brown*, 300 Kan. 565, 574,] 331 P.3d [797 (2014)]. "If a defendant seeks substitute counsel, the defendant must show justifiable dissatisfaction with his or her appointed counsel, which can be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant." 300 Kan. [565], Syl. ¶ 3.'

> "'A criminal defendant seeking new counsel must provide an articulated statement of attorney dissatisfaction. Such a statement by the defendant triggers the district court's duty to inquire into the potential conflict of interest. [300 Kan. at 575]. "A district court's duty to inquire into a potential attorney/client conflict emanates from its

9

responsibility to assure that a defendant's constitutional right to effective assistance of counsel is honored." 300 Kan. [565], Syl. ¶ 5.'

"'The district court's refusal to appoint new trial counsel is reviewed using an abuse of discretion standard. 300 Kan. [565], Syl. ¶ 6. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' *State v. Gooch*, No. 110,418, 2014 WL 5849227, at *6-7 (Kan. App. 2014) (unpublished opinion)." *Burns*, 2015 WL 4577271, at *2-3.

Here, Brown's testimony at the hearing on remand corroborated Burns' version of events that he testified to prior to his trial. On appeal, Burns concedes this testimony given at the remand hearing does not controvert Burns' version of events. The district court found Burns' complaint was based on "an invasion of personal space" and that there was no physical altercation of any kind; when Burns asked Brown to step away from him, Brown complied. The court also found no factual support that Brown threatened Burns. Being in a unique position as the judge who presided over the trial, the court observed Burns first hand at trial and described him as often belligerent, confrontational, and physically intimidating. Because of these characteristics and the age disparity between Burns and Brown, the court found it "highly unlikely that Brown would intentionally 'pick a fight' with a much younger and much more physically imposing individual like Stanley Burns."

Just as significant, the district court further held that Burns was diligently and competently represented at trial and the incident did not adversely affect Brown's representation of Burns. The court found Brown at all times to be fully prepared and that he diligently represented Burns during voir dire, made appropriate objections and arguments at trial, and zealously questioned adverse witnesses. After trial, Brown made motions for a mistrial, a new trial, and a downward durational and/or dispositional

10

departure sentence. Additionally, the district court found that Burns never again raised issue with Brown.

The district court went through the three different ways a defendant can show justifiable dissatisfaction. The district court concluded there was no complete breakdown of communication because Brown and Burns did communicate during the trial; there was no irreconcilable conflict between them because Burns and Brown reconciled their differences prior to trial and the trial proceeded without incident; and there was no allegation that Brown and Burns had a conflict of interest. In light of this, the district court held that because Brown failed to make a showing that these circumstances constituted justifiable dissatisfaction, Burns' right to effective assistance of counsel was honored.

Our review of the record supports the district court's conclusions. Moreover, we note the State's case against Burns was extremely strong. Burns made multiple threats to the victim while law enforcement was present. These threats were recorded by law enforcement and played for the jury. The victim also testified about the threats made on tape and previous threats Burns made to her. In light of the strength of the State's case, there is no reasonable possibility that having Brown as trial counsel affected the verdict.

The district court did not abuse its discretion in refusing to appoint new trial counsel to Burns.

Affirmed.