No. 57,729

STATE OF KANSAS, *Appellee*, v. JOHN LOVELY, *Appellant*.

(703 P.2d 828)

Opinion filed July 26, 1985.

*Eric Kjorlie,* of Topeka, argued the cause and was on the briefs for appellant.

*Kenneth R. Smith,* assistant district attorney, argued the cause, and *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: John Lovely appeals his jury trial conviction of aggravated battery (K.S.A. 21-3414).

On the night of July 9, 1984, a city-sponsored ladies softball game was played at Gage Park, Gage 3 Diamond, Topeka. The teams competing were known as the Lady Outlaws and the Lovely Ladies. The Lady Outlaws team was coached by Ronald K. Meyer and his assistants, Ignacio T. Cuevas and Jim Swindell. The Lovely Ladies team was coached by defendant, who was assisted by Willie Miller. In the fifth inning an altercation broke out involving defendant and Mr. Cuevas. Ultimately, both individuals were banished from the playing area by the umpire. The

Lady Outlaws won the game. After the game ended, trouble again erupted between defendant and Cuevas. The umpire, in the hope of clearing the area, turned off the lighting system. Instead of accomplishing the intended purpose, the darkness worsened the turmoil. Numerous team members and spectators became embroiled in something akin to the barroom brawl depicted in the Hollywood productions. Cuevas was struck at least once in the face with a baseball bat and suffered severe injuries, including a broken nose, a fractured jaw, and numerous facial fractures. Defendant was charged with, and convicted of, the aggravated battery of Mr. Cuevas.

Before proceeding to the issues, the extent of the involvement of the two judges who participated in this action should be noted and distinguished. Judge Matthew Dowd presided at all stages of the proceedings except for the post-trial hearing at which evidence was taken relative to claimed bailiff misconduct. This latter proceeding was Judge James Buchele's sole involvement with the case.

We turn now to the issues on appeal. For his first claim of error, defendant contends that the bailiff's ex parte communication with the jury mandates reversal of his conviction.

The facts relative to this issue may be summarized as follows. The jury commenced its deliberations sometime on November 15, 1984, and deliberations continued until 5:30 p.m. when the case was recessed until 8:30 a.m. the following morning. Deliberations continued on November 16, 1984. At approximately 11:10 a.m. the buzzer sounded in the bailiff's office indicating the jury desired contact with her. The bailiff went to the door of the jury room in response to the signal. What transpired thereafter is not seriously in dispute, although the legal significance of the events is the heart of this issue. The bailiff was handed a note on which the following was written:

"The jury is split between Aggravated Battery & Battery. . . . /s/ Linda Fenis, Foreman"

The bailiff took the note and attempted to locate the trial judge (Matthew Dowd). She was unable to locate him as he had left the courthouse about ten minutes earlier to keep "a previous appointment." No arrangements had been made, apparently, as to what the bailiff should do if she were to receive a communication from the jury during the trial judge's absence. No judge had been

designated to be "on call" in the event of such a situation developing. The bailiff returned to the jury room a few minutes later, where she advised the jury of the judge's absence. Then the bailiff stated:

"I said to them, 'I know what the judge would tell you: Please keep deliberating for a little while longer and then I'll let you go to lunch at 12 o'clock,' because it was only a half hour between then and lunchtime. I said, 'And then when you come back at 1:30 the judge will be back.'"

It should be noted the parties had previously agreed the bailiff could recess the jury for lunch and reconvene the jury for deliberations in the absence of counsel.

The judge did not return prior to 1:30 and the jury continued its deliberations without any communication from the judge. At approximately 2:30 p.m., the jury reached a verdict--guilty of aggravated battery. Fortuitously, Judge Dowd had returned to the courthouse by the time the jury signalled the reaching of a verdict.

Defendant contends that the bailiff's remarks to the jury were improper and coercive, and denied him a fair trial. We agree the remarks were improper in part, but do not agree with the other two contentions.

In the absence of the trial judge, the bailiff was confronted with a situation which required some action on her part. She could not place the jury in a state of suspended animation until the return of Judge Dowd. She had instructions to recess the jury for the period from 12:00 to 1:30. Nevertheless, she had to do something with the jury until noon—some response on her part was necessary. She should not have said, "I know what the judge would tell you"; however, in all likelihood that is what the judge would have said as only a short time remained before noon and it would have been necessary to locate counsel and have them and defendant present before determining whether or not to declare a mistrial.

We fail to see anything prejudicial in the statements of the bailiff. Her comments are in sharp contrast to those in *Parker v. Gladden,* 385 U.S. 363, 17 L.Ed.2d 420, 87 S.Ct. 468 (1966) where the bailiff told the jury, "Oh that wicked fellow [petitioner], he is guilty," and "If there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it." 385 U.S. at 363-64. In *Parker* the Supreme Court stated this unauthorized

conduct of the bailiff "involves such a probability that prejudice will result that it is deemed inherently lacking in due process." 385 U.S. at 365.

Defendant also contends the bailiff's comments were coercive and constituted in effect an *"Allen"* instruction. An *"Allen"* instruction had previously been given the jury along with the other instructions in the case and no claim of error is made relative thereto. There is nothing in the bailiff's comments compelling the jury to reach a verdict—no implication that they must remain sitting until a verdict was reached or, in any other way, putting pressure on the jury to reach a verdict. We find the bailiff's improper remarks to be harmless error beyond any reasonable doubt.

Before concluding this issue, some additional discussion is in order. The bailiff should never have been placed in the situation in which she found herself in this case. The trial judge left the courthouse to keep "a previous appointment." There is no indication any sudden emergency had arisen which required the judge's presence elsewhere. Nevertheless, the trial judge left without making any contingency arrangement for another judge to be on call in his absence. If on some rare occasion it is necessary for a judge to leave his jury, judicial coverage should be arranged and all involved parties and support personnel should be notified of the contingency plan. The situation herein should have been anticipated and the bailiff previously instructed as to what judge to contact in the trial judge's absence.

For his second issue defendant contends the district court erred in quashing the subpoenas he had caused to be issued for jurors to be examined in the hearing of a post-trial motion.

Defendant issued subpoenas for jurors to be present at a December 19, 1984, post-trial hearing relative to the bailiff's communication with the jurors (see issue one for the particular communication involved).

On December 14, 1984, there was a preliminary hearing on the matter before Judge Dowd wherein the following transpired:

"THE COURT: Well, let me clear this up. I was not prepared to consider this matter at this time. This, this is very close to what has previously been raised. We've got a setting next week when we can take this up in a formal session when everybody has an opportunity to be heard and present any testimony that they might want to present and I think that would be the proper way to proceed.

"MR. KJORLIE: Okay, and the judge will permit me to subpoena witnesses at that time?

"THE COURT: Well, I guess so. I don't know what else we can do.

"MR. KJORLIE: Okay, so be it. Thank you, Your Honor."

Thereafter, defendant filed an affidavit for the disqualification of Judge Dowd from further participation in the case. After an abortive first effort, a second such affidavit was ultimately sustained. The case was then assigned to Judge Buchele, who presided at the December 19, 1984, hearing. At this hearing the jury foreman and the bailiff testified. The court then noted that there was essentially no controversy as to the fact of the bailiff-jury communication. The court reasoned that the only new information to be gleaned from examination of the other jurors would be their respective states of mind as a result of the communication and such inquiry is precluded by K.S.A. 60-441, which provides:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

The district court then sustained the State's motion to quash the subpoenas of the other jurors.

Was this error? We believe not. As we noted in *Walters v. Hitchcock*, 237 Kan. 31, 697 P.2d 847 (1985):

"Under this rule, jurors may be recalled for post-trial hearings only by order of the court after hearing on the need therefor. Such recall is not a routine matter. Jury service is a public duty of our citizens and recall of jurors after their service has ended to testify as to events occurring in the jury room during deliberations is a serious step to be undertaken only for just cause. The procedure should never be utilized as a fishing trip upon a losing counsel's hope that jury misconduct might surface if the jurors could be questioned under oath. The burden is upon the party seeking an order recalling the jurors to show the necessity for the order." 237 Kan. at 36.

The facts relative to the communication were not in dispute in any material respect. K.S.A. 60-441 precludes inquiry into the effect such communication had on the individual jurors. Therefore, the testimony of any additional jurors as to the facts of the communication could only be cumulative. We find no error in the district court's quashing of the subpoenas.

For his third point, defendant contends that if reversible error is found on issue No. 1 (the bailiff-jury communication) that

double jeopardy should be deemed to have attached, thereby barring retrial of the case. Inasmuch as we have not found the bailiff-jury communication constitutes reversible error, this issue is moot.

The fourth issue is whether or not the trial court committed reversible error in questioning a juror in the absence of the defendant.

The trial herein was commenced on November 13, 1984. During the evening hours of November 14, one of the jurors received a telephone call. The unidentified female caller stated:

"It better be not guilty if you know what's good for you."

The call was reported to the court the following morning. The trial judge held a hearing attended by defense counsel, the prosecutor, and the juror. Defense counsel stated the defendant should be present. The hearing was held prior to the scheduled 9:30 a.m. resumption of the trial. Defendant was on bond and the hearing was held prior to his return to the courthouse for trial. The trial court questioned the juror. The juror concluded she could proceed without being influenced by the call. The State announced it was satisfied. Defense counsel indicated he had some reservations about having the juror continue to sit, concluding:

"[T]hough I'm not saying necessarily that we want it, but I'm afraid that we have to ask for a mistrial based upon conduct outside the courtroom that would be prejudicial to either side, be it the prosecution or the defense in this situation."

The following colloquy then occurred:

"THE COURT: Okay, well, do you want to do that now or do you want to talk to your client?

"MR. GAY [defense counsel]: Well, I think we have to talk to our client before we do that and if we can find him, then we'll set him down and explain everything to him.

"THE COURT: Okay, well, I'll postpone a final decision on it . . . ."

Later, the record reflects the following:

"THE COURT: I have decided not to declare a mistrial . . . after consultation with their client, Mr. Gay and Mr. Savaiano have advised the Court that they do not wish to pursue the motion for a mistrial."

In *Rushen v. Spain*, 464 U.S. 114, 78 L.Ed.2d 267, 104 S.Ct. 453 (1983), the United States Supreme Court was confronted with a factual situation in which the trial court had a wholly ex

parte discussion with a juror concerning her recall of a childhood friend's murder. At the trial, evidence of this murder was introduced to impeach the testimony of a defense witness. The evidence showed that the murder had been committed by a member of the Black Panther Party. At the time of the incidents for which he was on trial, the defendant was a Black Panther. No record was made of the conversation and defense counsel only learned of it after his client's conviction. *Rushen* clearly recognizes that a conference between a juror and the judge is a critical stage of the proceedings requiring the defendant's presence under the United States Constitution. The Supreme Court held it to be harmless error under the totality of the circumstances.

In *State v. Knapp*, 234 Kan. 170, 671 P.2d 520 (1983), a juror advised the bailiff she might have independent knowledge of the case. What occurred thereafter is summarized in *Knapp* as follows:

"A conference in the judge's chambers was held, attended by the judge, the juror, and counsel for both parties. Defendant was not advised and was not present. At this conference the judge inquired as to what effect this information had on the juror's mind. Both counsel were given an opportunity to inquire of the juror, and after she was excused from the judge's chambers, the decision was made not to remove her from the jury. Knapp's counsel wanted her left on the jury as he felt she would be a good juror for the defense. Knapp now claims prejudicial error occurred in this proceeding and decision made outside his presence." 234 Kan. at 179.

In analyzing this issue the court first turned to K.S.A. 22-3405(1) which stated:

"The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law. In prosecutions for crimes not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

The court then stated:

"The failure to have defendant present at the conference was a clear violation of the statute. A defendant has a constitutional right to a fair trial and the failure of defendant to be present at crucial stages of the trial is also a violation of that constitutional right." 234 Kan. at 180.

This court then found the error to be harmless.

We believe the same result should be reached herein. The dialogue between the juror and the court (in the presence of

defense counsel) certainly supports a conclusion the juror could serve fairly and impartially. Further, after raising the possibility of seeking a mistrial, defense counsel deferred making such a motion until after they could confer with their client (defendant). After so conferring, defense counsel advised the court they did not wish to pursue a motion for a mistrial. Defendant, then, after knowledge of the juror-court conference and discussion thereof with his counsel, was satisfied to have the juror continue to sit and the trial proceed. Only after conviction does defendant alter his position and claim a mistrial should have been granted as a result of this trial court error. We find that under the totality of the circumstances herein, the error in holding the court-juror conference in the absence of the defendant was harmless error beyond any reasonable doubt.

The fifth issue is whether the trial court erred in giving a supplemental instruction on the issue of intent.

During its deliberations the jury submitted a note to the judge asking, "Does 'intent of injury' start before the physical confrontation, during the confrontation, or at any time during the confrontation?" The answer that the court gave (over defendant's objection) was that "Intent can occur either before or during the criminal act."

A trial court is authorized to give supplemental instructions to a jury upon the jury's request pursuant to K.S.A. 1984 Supp. 60-248(e), which states:

"*Jury may request information after retiring.* If, after the jury has retired for deliberation, it desires further information as to any part of the law or evidence pertaining to the case, it may communicate its request through the bailiff to the court in the manner directed by the court, following which the court, after notice to counsel for the parties, may consider and make such provision for a response to the request of the jury as the court finds to be required under the circumstances."

In *State v. Thomas,* 6 Kan. App. 2d 925, 932, 636 P.2d 807 (1981), the court stated, under K.S.A. 60-248(e), the trial court may in its discretion make a response to the request of the jury for further information as to the law, as the court finds to be required under the circumstances.

Defendant does not contend the supplemental instruction is an incorrect statement of the law. Rather, he contends its being given, after the jury had already received the aiding and abetting instruction, was confusing. We have examined this issue and find it to be without merit.

For his sixth issue defendant challenges the sufficiency of the evidence sustaining his conviction.

In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Pham,* 234 Kan. 649, 667-68, 675 P.2d 848 (1984); *State v. Douglas,* 230 Kan. 744, 745-46, 640 P.2d 1259 (1982); *State v. McGhee,* 226 Kan. 698, 700-01, 602 P.2d 1339 (1979); *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979), citing *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979).

As would be expected, the testimony of the various witnesses to the after-game melee, as to precisely what had transpired, differed considerably. Applying the aforecited standard of review, we shall look only to the evidence in favor of the verdict. Lori Calderwood testified unequivocably that she saw defendant strike the victim in the head with a baseball bat. Another witness, Ruth Swindale, testified she saw defendant strike the victim's arm or shoulder with a baseball bat. The victim testified defendant struck him twice in the face with a baseball bat. It was undisputed the victim was severely injured by the blow or blows. The real issue in the case was the identity of the victim's assailant.

We have carefully reviewed the record and conclude that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Put another way, there is sufficient evidence to support defendant's conviction of aggravated battery.

All other issues raised, although not specifically addressed in this opinion, have been carefully considered and are found to be without merit.

The judgment is affirmed.