NOT DESIGNATED FOR PUBLICATION

No. 119,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRENDAN L. BECKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed May 3, 2019. Affirmed.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

PER CURIAM: Brendan L. Becker appeals his conviction of domestic battery. Becker claims the district court erred by: 1) refusing to give a defense of dwelling instruction; (2) failing to give a defense of property other than a dwelling instruction; (3) failing to give an affirmative defense instruction; and (4) erroneously giving an outdated presumption of innocence instruction. Becker also claims he was denied a fair trial based on cumulative error. We reject Becker's claims and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Becker and K.M. dated for about two years, and they lived together at an apartment leased to Becker in Johnson County from June 2016 until November 2016. K.M. moved out of the apartment in November 2016, but she kept toiletries and clothes at the apartment and continued to stay there three to four times a week for the next year.

On November 5, 2017, officers from the Overland Park Police Department responded to a call from Becker in which he reported that his girlfriend was hitting him. After taking statements from both Becker and K.M., the officers decided to arrest Becker. The next day, the State charged Becker with domestic battery, and he pleaded not guilty and requested a jury trial.

At the jury trial, K.M. testified that she stayed at Becker's apartment the night before the arrest, and she left the following morning to go to work with no apparent disagreement from Becker. She returned that afternoon and Becker let her into the apartment. K.M. said Becker seemed angry and somewhat rude towards her, and he asked her to leave. She started to gather her things, including a red bag containing her work uniform and some toiletries so that she could leave his apartment. Becker then took that bag and hid it in the closet in his bedroom. Becker told K.M. that she could not have any of the items that remained in his apartment until he received his own property—saws and other tools—still at her house from when they had lived together there.

K.M. testified that Becker then tried to block her from retrieving the bag from his closet, but she eventually squeezed past him and retrieved her property. Becker again took the bag, this time forcefully enough to cause a small cut on K.M.'s finger, and tossed it back into his closet. K.M. also testified that after a few more minutes of arguing and Becker telling her to leave several times, he called the police and then hung up. Becker

2

then grabbed K.M.'s upper arm and led her outside the apartment, with her bag remaining in his closet. He went back inside and closed the door.

Becker realized that K.M.'s car keys were still in the apartment, so he opened the door and gave K.M. her keys. Becker then left the apartment. When the police arrived, K.M. was in her car in the parking lot, and she decided to speak with the officers. The officers eventually assisted K.M. in getting her property out of the apartment.

Officer Austin Unrein, one of the officers who responded to Becker's call, testified that dispatchers directed him to a physical disturbance in which a male caller—later identified as Becker—said that his girlfriend was hitting him and then hung up the phone. When he arrived at the apartment, Unrein spoke with K.M. first. She appeared to be bleeding from injuries on her ring and middle fingers. She was visibly upset and looked like she had been crying. K.M. described the incident to Unrein, characterizing Becker's actions to remove her from the apartment as a "bear-hug."

Unrein stated that he then called Becker and asked him to return to the apartment. When Becker returned to the apartment, he told Unrein that 30 minutes before K.M. had arrived at his apartment, he had sent her a text message telling her that he wanted to break up. He also said he was angry that K.M. was "'bitching at him.'" Becker admitted letting K.M. into the apartment and blocking her from retrieving her property, but he added that K.M. had attacked him first. He also said he did not see K.M. as a threat because she was only "'120 pounds.'" Becker also said he "'just wanted this gal out of [his] apartment.'"

Becker presented no evidence at the trial. Before closing argument, Becker requested jury instructions on self-defense and defense of dwelling. The district court agreed to give the self-defense instruction—over the State's objection—because K.M.'s testimony that she engaged in physical contact was enough evidence to support that instruction. But the district court refused to give the defense of dwelling instruction.

3

The jury found Becker guilty of domestic battery. The district court sentenced Becker to 6 months in jail and granted probation for 12 months. Becker timely filed a notice of appeal.

JURY INSTRUCTION ON DEFENSE OF DWELLING

Becker first claims the district court erred by refusing to give a jury instruction on defense of dwelling. The State responds that a jury instruction on defense of dwelling was not supported by the evidence because a reasonable person would not have believed that force was necessary to remove K.M. from the apartment. The State also argues that the instruction did not apply because Becker had committed the crime of robbery and was the initial aggressor. Finally, the State argues that any error in failing to give the instruction was harmless.

The standard of review for jury instruction issues on appeal is well known:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted]" *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

The first step, whether a party has preserved a jury instruction issue, affects the appellate court's reversibility inquiry at the last step. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). At trial, Becker requested the defense of dwelling instruction after the close of the evidence. As a result, this court may reverse the district court's decision if the

4

failure to give the instruction was an error and if we determine there is a reasonable probability that the error affected the outcome of the trial given the entire record. *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

At the second and third step, this court should determine if the district court's refusal to give the instruction was in error by deciding whether the instruction was both legally and factually appropriate. *McLinn*, 307 Kan. at 317 (citing *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 [2016]). This court exercises unlimited review to determine whether the instruction was legally appropriate. *Johnson*, 304 Kan. at 931. A legally appropriate instruction must fairly and accurately state the applicable law. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). This court should then determine whether the instruction was factually appropriate by considering the evidence in the light most favorable to the defendant or requesting party. *Johnson*, 304 Kan. at 931.

K.S.A. 2018 Supp. 21-5223(a), the statute authorizing defense of a dwelling, states:

> "A person is justified in the use of force against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessary to prevent or terminate such other's unlawful *entry into* or attack upon such person's dwelling, place of work or occupied vehicle." (Emphasis added.)

Based on the statutory language, we question whether a defense of dwelling instruction was legally appropriate in Becker's case. Becker argues that the instruction was legally justified because the evidence showed that he used physical force to prevent K.M. from *unlawfully remaining in* his dwelling place. But K.S.A. 2018 Supp. 21-5223(a) provides that a person is justified in the use of force against another only when such use of force is necessary to prevent an unlawful *entry into* or attack upon a person's

5

dwelling. But because the State concedes that the defense of dwelling instruction was legally appropriate, we will proceed with the next step of the analysis.

This court next must determine whether the instruction was factually appropriate by considering the evidence in the light most favorable to the defendant. *Johnson*, 304 Kan. at 931. To be factually appropriate, the defense of dwelling instruction requires both a subjective and objective prong. First, the defendant must subjectively believe that (1) there was an unlawful entry into or attack upon the dwelling, and (2) the use of force was necessary to prevent or terminate the unlawful entry into or attack upon the dwelling. Then, an objectively reasonable person under the circumstances must share in the defendant's belief and come to the same conclusion. See K.S.A. 2018 Supp. 21-5223(a); *State v. Andrew*, 301 Kan. 36, 45, 340 P.3d 476 (2014) (applying this framework to determine whether evidence supported a legally-sufficient claim of self-defense).

We find that the defense of dwelling instruction was not factually appropriate here because Becker at first allowed K.M. to enter the apartment, and the only reason she did not leave was because Becker took her personal belongings and hid them. K.M.'s testimony showed that her only reason for staying in the apartment was to retrieve her own property, an obstacle created and made harder to overcome by Becker. Under these circumstances, no reasonable person would believe the use of force was necessary to expel K.M. from the apartment. As a result, Becker fails to satisfy the objective test necessary to support the use of the instruction. See *State v. Ulmer*, No. 114,315, 2016 WL 7428362, at *7 (Kan. App. 2016) (unpublished opinion) (finding that defense of dwelling instruction was factually inappropriate despite defendant's claim that victim was unlawfully remaining within the dwelling), *rev. denied* 306 Kan. 1330 (2017).

Alternatively, the State argues that Becker was not entitled to a defense of dwelling instruction because he committed the crime of robbery by taking and withholding K.M.'s property. Under K.S.A. 2018 Supp. 21-5226(a), a defendant is not

6

entitled to a defense of dwelling instruction when the defendant is attempting to commit or is committing a forcible felony. "Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2018 Supp. 21-5420(a). Here, there is evidence in the record to show that Becker took K.M.'s bag from her hands twice and refused to return the property. There is also evidence in the record to show that the second time Becker took K.M.'s bag, he did so forcefully enough to cut her finger. We agree with the State that the language of K.S.A. 2018 Supp. 21-5226 provides an alternative basis for finding that the defense of dwelling instruction was not factually appropriate in Becker's case.

Finally, the State argues that any error in failing to give the defense of dwelling instruction was harmless. Here, the jury rejected Becker's self-defense claim. If the jury rejected Becker's self-defense claim, it seems unlikely that it would have been persuaded by his defense of dwelling claim because both defenses were based on essentially the same evidence. We agree with the State that any error committed by the district court in failing to give the defense of dwelling instruction did not affect Becker's substantial rights, meaning it did not affect the trial's outcome. See *Ward*, 292 Kan. at 565.

JURY INSTRUCTION ON DEFENSE OF PROPERTY OTHER THAN A DWELLING

Next, Becker claims the district court erred by failing to give a jury instruction on defense of property other than a dwelling. Becker did not request the defense of property instruction at trial or object to its omission, so this court may review only whether the failure to give the instruction was clearly erroneous. K.S.A. 2018 Supp. 22-3414(3); *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). When the appellate court applies the clear error standard of review, it will only reverse the district court if an error occurred and the court is firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error has the burden to show the necessary prejudice. *McLinn*, 307 Kan. at 318.

7

K.S.A. 2018 Supp. 21-5225, the statute authorizing defense of property other than a dwelling, states:

> "A person who is *lawfully in possession* of property other than a dwelling, place of work or occupied vehicle is justified in the use of force against another for the purpose of preventing or terminating an unlawful interference with such property. Only such use of force as a reasonable person would deem necessary to prevent or terminate the interference may intentionally be used." (Emphasis added.)

Becker argues the district court should have given the following instruction, based on PIK Crim. 4th 52.220 (2016 Supp.):

> "The defendant claims his conduct was permitted as a lawful defense of *his* property.
> "A person *lawfully in possession* of property is permitted to use such physical force not likely to cause death or great bodily harm against another person to stop an unlawful interference with his property as would appear necessary to a reasonable person under the circumstances then existing." (Emphases added.)

We find that a jury instruction on defense of property other than a dwelling would have been factually inappropriate in Becker's case for all the same reasons that a defense of dwelling instruction was factually inappropriate. Plus, the evidence showed that Becker was not trying to protect any of his own property during his confrontation with K.M.; instead, he was trying to prevent K.M. from retrieving her personal property that Becker hid in the closet. Becker told K.M. that she could not have her personal items until he received his own property—saws and other tools—but those items were at K.M.'s house from when they lived together there, and the items were not even in the apartment where the confrontation took place. We conclude the district court did not commit any error, and certainly did not commit clear error, by failing to give a jury instruction on defense of property other than a dwelling.

8

Next, Becker claims the district court erred when it gave no affirmative defense instruction. Becker did not request this instruction at trial, so this court should only reverse his conviction if we determine that the failure to give an affirmative defense instruction was clear error. K.S.A. 2018 Supp. 22-3414(3); *Butler*, 307 Kan. at 845.

PIK Crim. 4th 51.050 (2017 Supp.) sets forth the following affirmative defense instruction: "The defendant raises *describe the defense claimed* as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant." This instruction would have been legally and factually appropriate here because the district court instructed the jury on Becker's claim of self-defense. As a result, the district court's failure to give an affirmative defense instruction along with the self-defense instruction was an error. But we will reverse Becker's conviction because of this error only if this court is firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. *McLinn*, 307 Kan. at 318.

Here, the district court generally instructed the jury that "[t]he State has the burden to prove the defendant is guilty." The instruction used by the district court informed the jury of the correct test in determining whether Becker was guilty or not guilty:

> "If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

In *State v. Crabtree*, 248 Kan. 33, 40, 805 P.2d 1 (1991), the Kansas Supreme Court held that the omission of an affirmative defense instruction was not clear error if

9

the court explains the State's burden of proof in other instructions. In this instance, we are not firmly convinced that the district court's failure to give the affirmative defense instruction would have made a difference in the verdict because the district court otherwise instructed the jury on the State's overall burden of proof. As a result, we conclude the district court's failure to give the affirmative defense instruction was not clear error requiring the reversal of Becker's conviction.

JURY INSTRUCTION ON PRESUMPTION OF INNOCENCE

Next, Becker claims the district court erroneously instructed the jury on the presumption of innocence. Here, the district court instructed the jury: "You must presume that [Becker] is not guilty *until* you are convinced from the evidence that he is guilty." (Emphasis added.) Becker points out that PIK Crim. 4th 51.010 provides that the jury "must presume that [the defendant] is not guilty *unless* you are convinced from the evidence that [the defendant] is guilty." Becker now argues that the instruction as given by the district court was erroneous and that the error misled the jury and deprived him of the presumption of innocence. Becker did not object to the instruction at trial, so we review for clear error. K.S.A. 2018 Supp. 22-3414(3).

We begin by noting that K.S.A. 2018 Supp. 21-5108(b) states that a "defendant is presumed to be innocent *until* proven guilty." (Emphasis added.) Thus, the instruction given by the district court appears to be legally appropriate.

Becker cites *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004), to support his argument. In *Wilkerson*, although the district court's instruction on presumption of innocence reflected the statutory language, a unanimous Kansas Supreme Court decreed that the instruction "would have been improved" by substituting the word "unless" for the word "until." 278 Kan. at 158. But the court found that this error did not require reversal of the defendant's conviction because the instructions as a whole

10

accurately stated the law. 278 Kan. at 158. The PIK committee changed the pattern instruction in response to *Wilkerson*, but it appears the district court in Becker's case used an outdated version of the PIK instruction.

Despite the change in the PIK instruction, no Kansas court has reversed a conviction because of the use of the word "until" rather than "unless" in a jury instruction on the presumption of innocence. See *State v. Cofield*, 288 Kan. 367, 377-78, 203 P.3d 1261 (2009); *State v. Anderson*, 287 Kan. 325, 342-43, 197 P.3d 409 (2008); *State v. Davis*, 284 Kan. 728, 739, 163 P.3d 1224 (2007) (finding no clear error in this "oft-made, always rejected" issue). The Kansas Supreme Court most recently considered the issue in *State v. Smith*, 299 Kan. 962, 980, 327 P.3d 441 (2014), where it again held that the use of "until" was not clear error. Likewise, we conclude the district court here did not commit clear error by giving its instruction on the presumption of innocence.

CUMULATIVE ERROR

Finally, Becker claims he was denied a fair trial based on cumulative error. For a cumulative error claim, the test is whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014).

We have identified two errors in Becker's trial, although neither was a clear error requiring reversal of Becker's conviction. First, the district court erred by failing to give an affirmative defense instruction. Second, the district court erred by giving an old version of the presumption of innocence instruction. Examining these errors in the

11

context of the entire record, we find that the errors did not substantially prejudice Becker to the extent that he was denied a fair trial. We conclude that the overall strength of the evidence supporting Becker's guilt, along with all the remaining circumstances of the case, militates against a finding that his conviction of domestic battery should be reversed based on cumulative error.

Affirmed.