NOT DESIGNATED FOR PUBLICATION

No. 113,228

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAQUANTRIUS S. JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion on remand filed May 1, 2020. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

PER CURIAM: This case returns to us on remand from our Supreme Court. The court has directed us to consider all the issues raised by Johnson in his appeal, in the light of its ruling that the trial judge napping during the trial, as pointed out by the jury, was not structural error. *State v. Johnson*, 310 Kan. 909, 453 P.3d 281(2019). We are directed to determine the question of reversing Johnson's conviction under a judicial misconduct analysis. The Supreme Court held that "Johnson must demonstrate that the misconduct prejudiced his substantial rights." 310 Kan. at 918. We have also been directed that our analysis "must include a consideration of the overall strength of the evidence against

1

Johnson and the impact of any curative steps taken by the trial judge to purge the taint of the misconduct." 310 Kan. at 918.

Our review of the record and the arguments of the parties leads us to hold that Johnson invited this error through declining a mistrial and has failed to show the judicial misconduct of napping during the trial has prejudiced his substantial rights.

The Supreme Court also ruled that a trial court must obtain a limited jury trial waiver from the accused before accepting a stipulation to an element of the crime charged from the accused. This ruling pertains to Johnson's charge of criminal possession of a firearm by a convicted felon. In accordance with the Supreme Court's holding on this point, we reverse that conviction and remand for a new trial.

Our analysis begins with an examination of two aspects of the claimed judicial misconduct—invited error and prejudice. Did Johnson invite the error? And even if he did not invite the error, were his substantial rights affected by the misconduct? We will then move on to address several other issues raised by Johnson.

*We look first at invited error.*

After his napping came to light, the trial judge asked Johnson whether he wanted to ask for a mistrial. Johnson's attorney declined. In his brief, Johnson argued the invited error rule did not preclude review of this issue for two reasons:

- The error was structural; and
- his attorney's decision to decline a mistrial was an ineffectual waiver of his constitutional right to a jury trial.

We all know now that what happened is not structural error from our Supreme Court's opinion. So, we look to Johnson's second argument about an ineffectual waiver.

2

Johnson argued his constitutional right to a presiding judge was incorporated into his right to a jury trial, and his attorney could not waive his jury trial right according to *State v. Frye*, 294 Kan. 364, Syl. ¶ 3, 372, 277 P.3d 1091 (2012). In *Frye*, the court held that a jury trial waiver is not valid unless the defendant personally waives his or her right to a jury trial. Johnson then fleshes out his argument with a quotation from an old case, *Capital Traction Co. v. Hof*, 174 U.S. 1, 13-14, 19 S. Ct. 580, 43 L. Ed. 873 (1899), when the court held that a "trial by jury" is not merely a trial by 12 jurors, but is a trial in "the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and . . . to set aside their verdict, if, in his opinion, it is against the law or the evidence."

But this argument against applying the invited error doctrine does not hold up considering our Supreme Court's decision. When the court ruled there was no structural error, it also ruled that the trial court judge did not "so abdicate[] and abandon[] his judicial responsibilities that he was effectively absent from the courtroom." 310 Kan. at 917. Thus, Johnson's argument that his defense attorney's waiver of a mistrial amounted to a waiver of his jury trial right cannot be upheld considering these Supreme Court holdings. Since the court ruled that the judge was not absent from the courtroom, we cannot avoid applying the invited error doctrine.

A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). The long-standing rule supports the common-sense notion that parties cannot complain about their own conduct at trial or about rulings they asked a trial judge to make. See *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013). The invited error doctrine binds trial counsel to strategic decisions and deters parties from asking a judge to act in a certain way to litter the record with error to provide grounds for appeal of an adverse judgment. 48 Kan. App. 2d at 532. The *Hargrove* court held that an invited jury instruction error cannot be asserted as error on appeal when the instruction was proposed for tactical advantage. 48 Kan. App. 2d at

3

547. In *Verser*, our Supreme Court applied the invited error doctrine when a trial judge gave the defendant the option of having a mistrial declared, and the defendant chose to continue the trial. 299 Kan. at 784. A defendant's actions in causing the alleged error and the context in which those actions occurred must be scrutinized in deciding whether to apply the invited-error doctrine. There is no bright-line rule for its application. *State v. Fleming*, 308 Kan. 689, Syl. ¶ 4, 423 P.3d 506 (2018).

It is unclear why Johnson's counsel declined to ask for a mistrial. Because Johnson chose to proceed to trial rather than pursue a mistrial and the judicial misconduct was not structural error, the invited error doctrine precludes our review. But we will go on to examine prejudice as directed by the Supreme Court.

*Prejudice*

In this analysis, we will follow the directions of our Supreme Court. We will consider the overall strength of the evidence against Johnson and then decide whether the curative steps taken by the trial judge were effective in purging the taint of his misconduct. We give a brief review of the evidence.

In October 2013, Randall Gifford was in his living room in Wichita when he saw two boys walking down the street in front of his house. One of the boys threw a pop bottle into Gifford's yard. Gifford went outside and asked the boys to pick up the pop bottle. The boys responded, "fuck you." Gifford got into his car and followed the boys as they ran away. Gifford called 911. Gifford took pictures of the boys with his cell phone camera.

The boys went up to a house on Roseberry Street and knocked on the door. A man answered the door wearing a white tank top and blue or black shorts with a white stripe down the side. Gifford was parked near the intersection of Roseberry and Cessna. He

4

took a cell phone picture of the man speaking with the boys. The picture was blurry. The man went inside the house for a short time and came back out and started walking toward Gifford's car on Roseberry. Gifford started backing up on Cessna. The man walked out into Cessna Street near the intersection, pulled out a gun, and fired a shot. Gifford accelerated in reverse to get out of there.

Gifford told the 911 dispatcher:

"He fired it towards me, but I think he was pointing more up in the air . . . but it was still towards me . . . he wasn't pointing directly up . . . But I was also backing up pretty fast though . . . and I was quite a ways away from him, I was 4 or 5 houses away from him . . . when he fired."

Gifford told one police officer that the shooter "intentionally fired over his head." At trial, Gifford testified that the man pointed the gun at his car. Gifford's car was not hit by a bullet.

Gifford told the 911 dispatcher that the man who fired the gun was dressed in a light gray shirt and black pants with white stripes. He was unsure whether the gray shirt was long-sleeved or short-sleeved.

When police officers arrived, Johnson, an African-American man, walked out of the house on Roseberry. Johnson told police he resided at the house. The police performed a sweep of the house and found no one in the house. Johnson was wearing a pair of dark blue athletic shorts with white stripes and a light gray sweatshirt. He wore a white tank top underneath his sweatshirt. Johnson was detained.

Johnson's girlfriend, Summer Markrum, arrived at the house. Markrum gave the police permission to search the house for a gun. The police searched but did not find a

5

gun. They did find a bullet shell casing on Cessna Street near the intersection of Cessna and Roseberry.

The police brought Gifford back to the house on Roseberry to make an identification. They pulled a man out of a squad car in handcuffs. Gifford told the police he was 50 percent sure that the man was the person who fired the gun. He was unsure because the person who fired the gun was wearing a white cut off shirt; this man was not. Gifford was never close enough to get a good look at the man's face. Gifford told the police he was 100 percent sure that the person whom he had taken a picture of at the house on Roseberry was the person who had fired a gun.

Johnson told the police that two boys had come up to his porch. The boys reported that a man was following them. He was also videotaping and photographing them. While Johnson tried to reach the boys' parents, he heard a gunshot. The boys ran away. Johnson confirmed he was the man in the photograph but denied firing a gun.

Police allowed Markrum to speak with Johnson. Sergeant Bart Brunscheen first testified that he overheard Johnson tell Markrum that "he was going to go to jail for firing a gun." After refreshing his memory, Brunscheen testified that he overheard Johnson say that "he did shoot the gun, but . . . he wasn't shooting it at anybody." Markrum testified that Johnson told her he did not shoot a gun.

The evidence about the identity of the shooter is not strong. Identity was disputed. Gifford did not see the shooter's face. He identified Johnson only based on clothing. But Johnson did admit that he was the person in the blurry photo that Gifford took. Johnson has not shown us how the judge napping during his trial affected his trial rights. Through weighing the evidence, the identity of the shooter was determined by the jury. Thus, we move on to the curative steps taken by the trial judge.

The trial judge addressed his napping on the record and admitted he "did nod off some," but stated that he did not believe any objections were made that were affected by his nodding off. He reminded the jurors that determining Johnson's guilt or innocence was their call, not his. In front of the jury, the judge gave Johnson the option of requesting a mistrial. Johnson chose to proceed. The judge said he would "try to do better."

That did not end the matter. One of the jurors sought to bring the matter up during deliberations. The judge instructed the bailiff to tell the jury to only consider the evidence in the case. There is nothing to suggest that the jury did not follow that instruction. The juror that brought the matter to the court's attention phrased the question as whether Johnson could have a fair trial. Given that the jury found Johnson guilty on all counts, it does not appear to us that the judge's napping affected the jury's verdict. And Johnson cites no specific testimony that the judge overlooked when denying Johnson's motion for judgment of acquittal.

The judge's action taken the next morning of trial—by giving a full explanation on the record to the jury and offering Johnson a chance to ask for a mistrial—purged the taint of his misconduct. See *State v. Gaither*, 283 Kan. 671, 684, 156 P.3d 602 (2007). We will not reverse Johnson's convictions on this ground.

We now move on to other issues raised by Johnson that we did not address since we overturned his convictions based on structural error.

*Any error by the bailiff was harmless.*

In an issue raised for the first time on appeal, Johnson argues that the bailiff's communication to the jury was erroneous. Johnson contends that the bailiff's statement to

7

a juror violated his right to a judge presiding over his jury trial and his right to be present at all critical stages of his trial.

The matter was brought to light by the judge himself. According to the trial court, on the morning of the second day of the trial,

> "[The bailiff], I think, explained to the juror that raised that [judge sleeping] issue that you are the trier of facts and at the conclusion of the case you are the ones that decide all the factual issues and reach a determination as to whether or not Mr. Johnson is guilty or not guilty and whether or not the case has been proven, and that is a correct assessment of the matter."

The judge admitted he nodded off, further instructed the jury, and asked whether Johnson wanted to ask for a mistrial. Defense counsel declined.

The constitutional harmless error test applies when a bailiff, on his or her own, improperly communicates with the jury—the error must be harmless beyond a reasonable doubt. See *State v. Bowen*, 299 Kan. 339, 357, 323 P.3d 853 (2014). In *Bowen*, the court held that a violation of a defendant's right to be present is subject to the constitutional harmless error test. Then in *State v. Lovely*, 237 Kan. 838, 840-41, 703 P.2d 828 (1985), the court ruled the bailiff's communication to the jury when she could not find the judge was harmless beyond a reasonable doubt. See *State v. Morton*, 230 Kan. 525, 528, 638 P.2d 928 (1982).

Johnson admits that the bailiff's comments were "not particularly prejudicial," at least as reflected in the record. He instead relies on speculation that the trial court may have incorrectly summarized what the bailiff told the jury. While the party benefiting from a constitutional error has the burden to show the error was harmless, Johnson had the responsibility to object below—once the improper communication became known—so that a proper record could be made on the error.

Johnson did not raise this issue below. Johnson contends the court may review this issue for the first time on appeal because it implicates two fundamental rights:

- The right to a presiding judge; and

- a defendant's right to be present during a critical phase of the trial.

But if he relies on facts that are missing from the record—for example the bailiff's testimony on what she told the jury—it becomes an issue of fact that precludes this court's review for the first time on appeal. The record, as it stands, shows that the bailiff's error did not prejudice Johnson.

We also note that in the jury instructions, the judge told the jury much the same thing as the bailiff. Johnson did not object to that instruction. We do not see any prejudice here.

*Allowing the bailiff to orally communicate his instruction to the jury was error, but not reversible error.*

After the jury's verdict was read and the jury was dismissed, the court added one more matter to the record:

"THE COURT: . . . "[A]fter the read back and before the verdict was returned, as I understand, the jury asked [the bailiff] to come back on some issue. She did go back and, as I understand, the issue was whether or not [one of the jurors] could raise this issue that was raised yesterday. I instructed [the bailiff] to tell the jury that they're to consider only the evidence in the case and the instructions that are given, and no other issues need to be considered. Does that summarize that correctly, [bailiff]?

"THE BAILIFF: Yes, sir.

"THE COURT: Anything, Mr. Roush, you want to add to the record on that issue?

"[THE STATE]: Are we referring to the dozing off thing?

9

"THE COURT: Just the issue I now raised, [a juror] wanting to discuss the Court sleeping apparently during the afternoon session the day before yesterday.

"[THE STATE]: I feel like you addressed that in front of the jury, and I have no comment.

"THE COURT: Mr. Beall.

"[DEFENSE COUNSEL]: The same thing. I think that was addressed yesterday."

Johnson contends the trial court violated his statutory and constitutional right to be present and his right to have a judge preside over all critical stages of his trial. A defendant's right to be present at every critical stage of his or her criminal trial raises an issue of law over which this court exercises unlimited review. *Verser*, 299 Kan. at 787.

Johnson made no objection when the court put this matter on the record. We will consider this matter because it implicates Johnson's constitutional right to be present. The personal nature of the defendant's statutory and constitutional rights to be present at all critical stages means that they cannot be waived by counsel's mere failure to object. *Verser*, 299 Kan. 788.

This issue concerns K.S.A. 2014 Supp. 22-3420(d). That statute directs:

"The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. The court shall notify the parties of the contents of the questions and provide them an opportunity to discuss an appropriate response. The defendant must be present during the discussion of such written questions, unless such presence is waived. The court shall respond to all questions from a deliberating jury in open court or in writing. In its discretion, the court may grant a jury's request to rehear testimony. The defendant must be present during any response if given in open court, unless such presence is waived. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record."

10

The State contends the statute does not apply because the juror question did not relate to "instructions or evidence." But because a juror asked if he could raise the fact that the trial judge slept through portions of the trial, during deliberations, the question related to the instruction the jury had been given the second day of the trial. We hold the statute applies.

Here, the trial court violated K.S.A. 2014 Supp. 22-3420(d) in several ways:

- The jury question at issue was not in writing;
- the court did not notify the parties of the question and provide them a chance to discuss a response;
- Johnson was not present during a discussion of the written question;
- the court did not respond to the question in open court or in writing; and
- the question and response were not made part of the record—only a summary was provided after the trial was complete.

A criminal defendant has a right under the Sixth and Fourteenth Amendments to the United States Constitution to be present at every critical stage of a trial. A critical stage occurs whenever the trial court communicates with the jury. *State v. Herbel*, 296 Kan. 1101, Syl. ¶ 1, 1109, 299 P.3d 292 (2013). The trial court's ex parte communication to the jury violated Johnson's constitutional right to be present at a critical stage of the trial. See *State v. Martinez*, 288 Kan. 443, 450, 204 P.3d 601 (2009).

The violation of Johnson's constitutional right to be present at a critical stage of the trial is subject to a harmless error analysis. The error is harmless only if the State proves beyond a reasonable doubt that the error did not affect the outcome of the trial given the entire record, i.e., there is no reasonable possibility that it contributed to the verdict. *Herbel*, 296 Kan. 1101, Syl. ¶ 2. The court considers four factors to determine whether the court's communication with the jury outside the presence of the defendant was harmless:

11

"(1) the overall strength of the prosecution's case; (2) whether an objection was lodged; (3) whether the ex parte communication concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter, and the manner in which it was conveyed to the jury; and (4) the ability of a posttrial remedy to mitigate the constitutional error." *Verser*, 299 Kan. at 789-90.

In our prior issue concerning prejudice, we considered the strength of the trial evidence. The victim's identification of Johnson was not strong. He was too far away to see the shooter's face. He identified Johnson based on the clothing Johnson was wearing. But Johnson admitted he was the person in the photo taken by Gifford.

No objection was lodged. The ex parte communication did not concern a critical aspect of the evidence presented at trial. Johnson does not claim error based on the substance of the trial court's response. Johnson's counsel did not seek any posttrial remedy based on this error. No reason has been offered why Johnson's presence would have made a difference. See *State v. Bolze-Sann*, 302 Kan. 198, 217, 352 P.3d 511 (2015).

A ruling from this court affords some perspective on this issue. In *State v. Womelsdorf*, 47 Kan. App. 2d 307, 274 P.3d 662 (2012), this court held that a defendant's right to an impartial judge was not violated when the trial court had the bailiff deliver a written answer to a jury question rather than calling the jury into the courtroom to communicate the answer. 47 Kan. App. 2d at 319, 324. The court characterized the answer as a "short written answer to a jury question which does not provide additional information." 47 Kan. App. 2d at 324. The answer told the jury to "'consider only the evidence admitted during the trial.'" 47 Kan. App. 2d at 319. Johnson tries to distinguish *Womelsdorf*, but the only real distinction is that the answer to the jury question in *Womelsdorf* was written rather than oral. We hold this error was harmless.

*Affidavits clarify the record on Johnson's appearance at trial.*

Johnson contends that the record does not show he was present during critical stages of his trial because appearances were not entered following court recesses.

After Johnson's brief was filed in this case, the State filed a motion for stay to resolve this issue. This court granted the motion and remanded the case to the district court to allow for clarification of Johnson's presence during various stages of the trial. Johnson's trial counsel and two prosecutors signed affidavits that stated Johnson was present during all stages of the trial. The affidavits were added to the appellate record and this court lifted its stay. The record now affirmatively reflects that Johnson was present during critical stages of the trial. Johnson has no right to relief on this issue.

*The trial court erred by failing to secure a jury trial waiver before accepting a stipulation from Johnson on an element to one of the charges.*

Johnson was charged with criminal possession of a firearm by a convicted felon. He signed a stipulation that stated he had a prior juvenile adjudication that prohibited him from owning and possessing a firearm. The trial court read the stipulation during preliminary instructions. Our Supreme Court ruled that the trial court erred when it accepted Johnson's stipulation without first obtaining a knowing and voluntary jury trial waiver on the record. 310 Kan. 909, Syl. ¶ 3.

Because Johnson's right to a jury trial was violated on the criminal possession of a firearm charge, the remedy is to reverse the conviction and remand for a new trial on this charge. See *Frye*, 294 Kan. at 371; *State v. Chavez-Majors*, 54 Kan. App. 2d 543, 551-52, 402 P.3d 1168 (2017).

*The court erred when it refused to instruct the jury on the lesser included charge of misdemeanor criminal discharge of a firearm.*

We have ruled on this issue, and the State did not include it in its petition for review to the Supreme Court. Our prior holding that the trial court erred when it failed to instruct the jury on the lesser included offense of misdemeanor criminal discharge of a firearm stands.

*Cumulative error does not compel reversal here.*

A single conviction for aggravated assault remains. The applicable errors include:

- The judge napping—not reversible error, but still error;
- the bailiff's improper communication with a juror during the trial; and
- the bailiff's improper communication with the jury during deliberations.

The bailiff's communications with the jury both pertained to the judge's napping. Johnson does not object to the content of those communications.

We are not persuaded that cumulative error calls for a reversal here. We turn now to some sentencing issues raised on appeal.

*Precedent tells us the Kansas Offender Registration Act is constitutional.*

Johnson contends that K.S.A. 2013 Supp. 22-4902(e)(2) is facially unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because it permits judicial fact-finding.

Caselaw teaches us otherwise. Our Supreme Court has refused to conclude that the registration requirements imposed on violent offenders are so punitive that they override

the Legislature's intent that the KORA be a civil/nonpunitive remedy. Thus, K.S.A. 2013 Supp. 22-4902 does not violate *Apprendi* on its face. See, e.g., *State v. Huey*, 306 Kan. 1005, 1009-10, 339 P.3d 211 (2017), *cert. denied* 138 S. Ct. 2673 (2018).

We will not rule that the KORA is unconstitutional.

*The use of a deadly weapon finding by the trial court is required to order offender registration.*

Johnson contends that offender registration cannot be part of his sentence because the trial court did not announce in open court that Johnson was subject to the KORA registration for this case, and it did not make an explicit deadly weapon finding under K.S.A. 2013 Supp. 22-4902(e)(2).

Johnson's sentence here—district court case no. 13-CR-3163—was consolidated with his sentence in another case—district court case no. 14-CR-45. In 14-CR-45, Johnson was found guilty of violating the KORA. After imposing the sentences in both cases, the trial court found,

> "You do, of course, have the continuing duty to . . . register under the Offender
> Registration Act. I'm not going to go into all of the details of that. I'm sure you're fully
> aware of what those requirements are. Somebody upon your release from prison will
> probably go over those with you again. Just pay very close attention to what they tell you
> because, as you well know from 14 CR 45, failing to register is a separate offense that
> can require you to spend additional time incarcerated."

Here, Johnson was convicted of two person felonies for which use of a deadly weapon was an element of the crime:

- Criminal discharge of a firearm in violation of K.S.A. 2013 Supp. 21-6308(a)(1)(B); and

15

- aggravated assault in violation of K.S.A. 2013 Supp. 21-5412(b)(1) (assault committed with a deadly weapon).

The sentencing judge did not explicitly state that he was making a deadly weapon finding under K.S.A. 2013 Supp. 22-4902(e)(2), but stated,

> "Had he not been in possession of a firearm, which was against the law, that crime would have never happened, the criminal discharge of a firearm, and possibly even the aggravated assault would have never happened. You get a gun in your hand and you feel pretty darn invisible . . . ."

The judge noted on Johnson's journal entry that he was subject to register due to violent offender status.

A sentence is effective when pronounced from the bench. *State v. Tafoya*, 304 Kan. 663, Syl. ¶ 2, 372 P.3d 1247 (2016). A journal entry that imposes a sentence at variance with the sentence pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed. *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012). But clarification is different from modification. A district court retains jurisdiction to file a journal entry that "clarifies an ambiguous or poorly articulated sentence pronounced from the bench." *State v. Jackson*, 291 Kan. 34, 36, 238 P.3d 246 (2010).

The trial court was unclear whether it was imposing a registration requirement for this case, reminding Johnson of his prior registration requirement, or both.

The court did say that Johnson possessed a "firearm" or "gun" when it discussed whether it would impose an aggravated sentence. The court did not say it was making a weapon "finding." The court later informed Johnson he had a "continuing duty to . . .

16

register." The journal entry does explicitly say the court made a deadly weapon finding. As for the aggravated assault conviction on the journal entry, the court checked a box showing that Johnson "committed the current crime with a deadly weapon as determined by the court." The court also checked the boxes showing Johnson was "informed of <u>duty to register</u> as an offender pursuant to the Kansas Offender Registration Act" and Johnson was "required to register due to ***VIOLENT OFFENDER*** status" because the court found "on the record that such felony was committed with a **DEADLY WEAPON**."

We find this case analogous with a recent Kansas Supreme Court case. In *State v. Marinelli*, 307 Kan. 768, 415 P.3d 405 (2018), the court at sentencing announced that registration was required under K.S.A. 22-4902(e)(2). The court found that an inherent element of the offense was use of a deadly weapon. On the journal entry of judgment, the court checked "'Yes'" next to the question: "'Did offender, as determined by the Court, commit the current crime with a deadly weapon?'" 307 Kan. at 772. And the court checked boxes showing it had informed the defendant of the duty to register and that the defendant had a duty to register as a violent offender because he committed his crime with a deadly weapon. Our Supreme Court had "no difficulty" concluding the trial court made a deadly weapon finding, citing the journal entry. 307 Kan. at 788-89.

If we follow the same logic used in *Marinelli*, we have no difficulty in concluding the trial court made a deadly weapon finding. Because the court made a deadly weapon finding, it could include a registration requirement on Johnson's journal entry even though it was unclear whether the court did impose a registration requirement on this case at sentencing. The trial court did not err.

*The court ordered lifetime registration in error.*

Both parties agree that the trial court incorrectly noted on Johnson's journal entry that he was subject to lifetime registration. K.S.A. 2013 Supp. 22-4906(c) requires

17

lifetime registration upon "a second or subsequent conviction of an offense requiring registration." The State concedes that Johnson has only a prior juvenile adjudication requiring registration. Our Supreme Court has held that juvenile adjudications are not "convictions" for registration purposes. *State v. Boyer*, 289 Kan. 108, 116, 209 P.3d 705 (2009).

Johnson's registration period should be 15 years. See K.S.A. 2013 Supp. 22-4906(a)(1)(M).

To sum up, we reverse Johnson's convictions for criminal possession of a firearm by a convicted felon and felony discharge of a firearm. We remand to the district court for a new trial. We vacate the lifetime registration order and remand to the district court with directions to order registration for 15 years. We affirm Johnson's aggravated assault conviction.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.